EDMOND V. FLATTERY, Appellee, v. JOHN H. GOODE, Appellant.

No. 47416.

(Reported in 38 N. W. 2d 668)

AUGUST 5, 1949.

Jones & White, of Ottumwa, for appellant.

Alfred M. Pabst, of Albia, for appellee.

OLIVER, J.—Plaintiff was a farmer. He was engaged by Patrick Crall to haul a truckload of soy beans to defendant. He drove the loaded truck to a grain car which defendant's employees were filling by means of a portable grain elevator which stood on the south side of the car.

The elevator was a power operated endless chain moving longitudinally in a square bottomed open trough about ten or twelve inches wide. Beans hauled to the car were unloaded into the receiving (south) end of the elevator trough called the hopper, and were carried (north) up into the car by the endless chain. The hopper was five or six feet long (north and south) and about eighteen to twenty-four inches wide at the top.

Power for the elevator was furnished by a tractor which stood about fifteen or twenty feet northwest of the hopper. A belt ran from the tractor to a power jack about four feet west of the north end of the hopper. This delivered the power to the elevator through a horizontal drive shaft several inches above the ground and about three and one-half feet long which was attached to the drive shaft of the elevator itself by a universal joint.

Under the directions of Kenneth Cloyed, defendant's employee, plaintiff backed his truck into position, facing east, with its rear end flush with the east edge of the hopper so when the endgate of the truck was raised the beans would flow into the hopper. Plaintiff then stepped to the rear of the truck and started to unfasten and raise the endgate. Patrick Crall and Marvin Kruse, an employee of defendant, were assisting him. Plaintiff was standing at the left rear (northwest) corner of

the truck; Crall at the rear about the center and Kruse at the right rear corner. Each of them was facing east, reaching over the hopper and working at the endgate. The north edge of the endgate became wedged fast after it was raised a few inches. Plaintiff picked up a hammer and struck the endgate a few times without result. Then he stepped backward with his right foot one and a half or two feet, to strike a harder blow. As he did this the universal joint or knuckle of the revolving drive shaft became entangled in the lower part of the right leg of his trousers. He was drawn into the drive shaft and was seriously injured.

Plaintiff brought this action for damages, alleging various grounds of negligence on the part of defendant. The only ground submitted to the jury was that while plaintiff was in an exposed position, defendant's employee Cloyed, without warning plaintiff, started the motor, resulting in the moving of the drive shaft and the universal joint or knuckle attached thereto within which plaintiff became entangled. The trial resulted in a judgment against defendant for $11,085.77 and this appeal by him.

The main errors assigned are based upon the refusal of the court to direct a verdict for defendant because of the insufficiency of the evidence to establish the pleaded negligence and plaintiff's freedom from contributory negligence. In considering these assignments of error the evidence will be viewed in the light most favorable to plaintiff.

There was substantial evidence Cloyed started the machinery while plaintiff was standing at the left rear corner of the truck, facing east, leaning over the hopper of the elevator and working to loosen the endgate of the truck, and that plaintiff was drawn into the drive shaft behind him only five or six seconds after the machinery was started. Although plaintiff had some experience with farm machinery and trucks, the record shows he was not familiar with this type of machine and had seen it in operation only one time, a year earlier. Then the machinery had been located on the opposite side of the elevator and there was none behind or beside a person standing at the endgate of a truck in the unloading position. Apparently plaintiff did not pay much attention to the machinery on either occasion. It was not running

when he walked to the rear of the truck and unfastened the endgate and attempted to raise it. During that time he was not in a place of danger. It became such only when Cloyed started the machinery. Plaintiff testified he observed and avoided the moving machinery in the hopper in front of him during the few seconds which elapsed after it started to move.

■ I. Defendant argues this observation made immaterial the failure to warn. He relies upon the rule stated in Ryan v. Trenkle, 203 Iowa 443, 445, 446, 212 N. W. 888, that one who observes the presence of a train or vehicle cannot, ordinarily, predicate negligence on the failure to signal such presence. The rule is not here applicable. Plaintiff was not injured by the machinery he observed. He was injured by the revolving universal joint to his left rear which he testified he had not observed either before or after the machinery was started. The record does not show such observation and knowledge of the universal joint by plaintiff as would entitle defendant to a directed verdict on the ground urged at this point.

■ II. Defendant contends also the proximate cause of the injury was not the starting of the machinery without warning but was plaintiff's conduct in continuing his efforts to raise the endgate and in stepping backward. In Burger v. Omaha & C. B. St. Ry. Co., 139 Iowa 645, 650, 651, 117 N. W. 35, 37, 130 Am. St. Rep. 343, plaintiff attempted to board a streetcar which started prematurely. There was evidence he continued his hold on the handrails and ran beside the car a short distance before he fell. Defendant complained of the refusal of a requested instruction that if the facts were found to be as there testified to, plaintiff could not recover because the starting of the car was not the proximate cause of his injury. The court said:

"The theory is well conceived in the interests of defendant, but it will not bear analysis. Of necessity it is based upon the supposition that the negligence of defendant ceased of effect once the immediate shock, incident to the premature starting of the car, had spent its force; that with the forward movement of the car, due care resumed its dominant sway. To hold in conformity with the view thus taken would be to write a new chapter on the law of negligence. Instead, it is the law, as universally applied,

that where one by his negligent act thrusts another into a position of danger, the act—and the negligence by which it is clothed —continues and controls as long as the danger continues, unmodified by any independent, affirmative, and voluntary act on the part of the person affected, or by some intervening controlling circumstance. And it is for the jury to say at what point or juncture, and in what particular, such person ceased to be dominated in his conduct by the act of negligence, and resumed voluntary control over his own actions."

So in the case at bar it was for the jury to determine whether the force which culminated in the injury to plaintiff was traceable to Cloyed's negligent conduct in starting the machinery without warning plaintiff, and the court did not err in overruling that ground of defendant's motion for a directed verdict.

III. The foregoing discussion is pertinent also to the question of contributory negligence. See Burger v. Omaha & C. B. St. Ry. Co., supra. Kinney v. Larsen, 239 Iowa 494, 31 N. W. 2d 635, and other railroad-crossing cases cited by defendant are not in point. In those cases the injured person went into a place of known and obvious danger. Here plaintiff was directed to a safe place by defendant's employee who thereafter created the danger by starting the machinery while plaintiff was there performing his duties.

O'Meara v. Green Constr. Co., 225 Iowa 1365, 282 N. W. 735, is more nearly in point on the facts. There, plaintiff was standing on the track of a caterpillar tractor servicing it with gasoline. He heard an order to the driver to move but did not dismount immediately, waiting for a gasoline pail to be emptied. The driver started the tractor suddenly and threw plaintiff into the path of another machine. Plaintiff's contributory negligence was held a question for the jury. The court stated plaintiff had a right to expect defendant's employees would pause after the order to move up to give him time to get down and out of danger.

Defendant cites also, Lewis v. Cratty, 231 Iowa 1355, 4 N. W. 2d 259, and similar decisions. In those cases the injured person was operating the machine and had knowledge of the parts which injured him. Here, there was substantial evidence

plaintiff had no such knowledge. Nor did plaintiff's failure to inspect the machinery before starting to perform his duties constitute contributory negligence as a matter of law. The place was safe and plaintiff was not required to anticipate any negligence on the part of defendant. Webber v. Larimer Hardware Co., 234 Iowa 1381, 1385, 15 N. W. 2d 286. The starting of the machinery without notice did not necessarily serve as a warning to plaintiff to cease performing his duties. It might well have been interpreted as an assurance there was no danger to plaintiff from the immediate machinery not visible in the direction in which he was then facing.

 Defendant contends plaintiff was negligent in stepping backward without looking where he was stepping. Counsel for plaintiff point to evidence plaintiff's attention was diverted by the sticking of the endgate through which some beans were flowing into the hopper and by the starting of the machinery within the hopper over which he was working. Wheeler v. Sioux Paving Brick Co., 162 Iowa 414, 430, 431, 142 N. W. 400, 406, was an action by a plaintiff who was injured when his trouser leg was caught by the knuckle and setscrew of a revolving shaft with which he was familiar and which he was trying to avoid when his attention was temporarily diverted by what he thought was the approach of a car. The court said:

"The authorities generally are to the effect that one whose attention is diverted is not to be held to the same closeness of observation as he would otherwise be; and where his act, but for such diverted attention, would have been negligent, upon proof tending to show conditions throwing him off his guard, the question of his negligence is one for the jury."

Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 687, 26 N. W. 2d 429, 449, 450, discusses and reaffirms the rule and cites many supporting authorities. The rule is here applicable. We hold that under the entire record the question of plaintiff's freedom from contributory negligence was for the jury.

 IV. Defendant assigns error to the refusal of the trial court to submit to the jury the following special interrogatory requested under Rule 206, Rules of Civil Procedure:

"Did the plaintiff, Edmond. V. Flattery, know, or in the exercise of ordinary care should have known, that the power shaft or tumbling rod was revolving at the time he stepped back against, or over, the same for the purpose of striking a harder blow with the hammer he was then using?"

We have already held plaintiff's knowledge the shaft was revolving would not necessarily bar his recovery. See Wheeler v. Sioux Paving Brick Co., supra. Hence the answer to the interrogatory would not have been determinative of any ultimate fact involved in the case at bar. Under such circumstances it is well settled the refusal to submit a requested special interrogatory is not an abuse of discretion. Marts v. John, 240 Iowa 180, 35 N. W. 2d 844; King v. Chicago, R. I. & P. R. Co., 185 Iowa 1227, 1237, 1240, 172 N. W. 268; Woodard v. Chicago, R. I. & P. R. Co., 193 Iowa 516, 527, 185 N. W. 978.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.