**S. & L. COMPANY OF DES MOINES,**
a corporation, Appellant,

v.

**Harry J. WOOD, Jr., Appellee.**

No. 17105.

United States Court of Appeals
Eighth Circuit.

Sept. 30, 1963.

L. R. Voigts, Des Moines, Iowa, made argument for appellant and Samuel G. O'Brien, Des Moines, Iowa, was with him on the brief.

Leo S. Ballard, Des Moines, Iowa, made argument for appellee and J. R. McManus, Des Moines, Iowa, was with him on the brief.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

Appellee recovered a judgment for personal injuries sustained when he fell down an elevator shaft while an invitee in ap-

pellant's premises. The jury found his injuries were caused by appellant's violation of the "elevator statutes" of the State of Iowa, set forth in the footnote,[1] and common law negligence for failure to provide sufficient illumination in and about the elevator and shaft as claimed by appellee. Appellant's answer to appellee's claim was a general denial, coupled with a charge of contributory negligence. Diversity of citizenship is the premise of federal jurisdiction in the case at bar. The law of the State of Iowa governs the occurrence in question.

The relevant facts are not substantially in dispute. Stated most favorably to the jury's verdict, it appears: * * * Appellee was a business invitee in appellant's store. As such, it was his duty to service a dispensing machine located therein. He had serviced that machine weekly from November 1959 to March 21, 1960, the date he was injured. The only way for appellee to gain entrance to appellant's store for that invited purpose was through a service entrance located on the alley side of the premises. That service entrance consisted of a loading platform and door which opened onto an elevator. That door could not be opened from the outside unless the elevator car was at the platform level of the loading dock. It was appellee's practice, well known to appellant, to enter appellant's premises at the service entrance and use the elevator to descend to the first floor of its store. On arrival there he would walk about twenty-five feet to the dispensing machine, pick up the empty cases alongside thereof, return therewith to the elevator, and ride up to the service entrance. Appellee would then secure the

1. Iowa Code Annotated:
 "Sec. 104.1. General equipment
 "Every elevator and elevator opening and machinery connected therewith in every elevator, hoistway, hatchway, and wellhole shall be so constructed, guarded, equipped, maintained, and operated as to render it safe for the purposes for which it is used.
 * * * * *
 "Sec. 104.4. Door or gate interlock
 "The hoistway doors and gates of all

passenger elevators shall be equipped with an approved interlock (locking device), electrical, mechanical or electro-mechanical, which will prevent the normal operation of the elevator car, unless the hoistway door at which the car is standing is closed and locked; or unless all hoistway doors are closed and locked; and second, shall prevent opening the hoistway door from the landing side except by a key or special mechanism; unless the car is standing at the landing door; * * *."

required cases of beverage from a truck to refill the dispensing machine, return therewith to the elevator, descend to the first floor and deposit the beverage in the machine. After that was done, he was required to collect for the delivered beverage. To do so, he had to walk to the business office of appellant which was located on a balcony above the first-floor level in the retail portion of its department store. After collecting for the beverage appellee would return to the elevator and use it for transportation up to the service entrance to return to his truck. There was no other reasonable exit-way for him to take leave from the store.

There was evidence to the effect that at the time appellee was injured only one electric light was burning in that part of appellant's premises near the elevator at the first-floor level and at a distance of about twenty-five feet from the elevator, close to the dispensing machine. Appellee's testimony as to "illumination", confirmed by the testimony of other witnesses, was to the effect that one could see the elevator door as it was approached, but within the shaft thereof it was not sufficiently illuminated, so that one could distinctly observe the elevator in the shaft when the door at the first-floor level was open. Thus the evidence established that when the first-floor door to the elevator was open, and within the shaft thereof, it was not a place of complete darkness; that the lighting condition thereabout was in that indefinable state between full light and complete darkness, which required one to "look hard" to perceive the elevator platform in the shaft at the first-floor level when the elevator door was open. Appellant's evidence was *contra* and to the effect that in the room where the elevator was located and within the shaft thereof it was well lighted; that one could plainly look inside the shaft and determine whether the elevator was there or not. Thus, there was a disputed factual issue as to "illumination" in and about the elevator and shaft.

When appellee returned from appellant's office to the elevator on the day in question, the door thereto was closed as it usually was when he visited appellant's premises on previous occasions. The door to the elevator at the first-floor level consisted of two solid vertical halves, the left part of which, when in operation, slid back of the right part, as one faced the door from the outside. There was an aperture approximately 4″ x 5″ located in the upper-left-hand part of the door. To open that door, which was the only operative mechanism for entrance to the elevator, one had to reach through the aperture and push up on an arm latch. As a consequence, at the time in question appellee took a position facing the door to the elevator, pushed the button for the elevator, waited a short time as was his custom, and then reached through the aperture and opened the door. After he opened the door he started to step toward the elevator shaft. Just as he was in the act of so doing, he heard someone holler, "Hi, Jim." That salutation caused appellee to turn his head to the right. He then recognized it was a friend who had hollered to him. Appellee waved and at the same time completed his step through the open door.

The record reveals that the elevator cage had a meshed top, two sides and a platform, but there was no front or back thereto. When the door at the first-floor level was opened, the vision at eye-level was a view of the wall of the shaft, and this was so, whether the elevator was or was not located at the first floor level. It is undisputed that after appellee opened the door to the elevator he was at all times facing the shaft of the elevator, until his attention was distracted by the salutation of his friend. From appellee's testimony and that of other witnesses the jury could reasonably have inferred that appellee, because of insufficient "illumination" in the shaft, would have had to "look hard" down at the elevator platform to perceive whether the elevator was at his floor level. His testimony to that effect was buttressed by that of other witnesses; but, from all the evidence adduced as to "illumination" in and about the elevator and shaft, the jury could reason-

ably have determined that it was not a situation where one acquainted with the operation of the elevator would have to grope in the dark to determine whether the platform was at the first-floor level, after the door was opened.

It was appellee's testimony that, relying on his previous experience indicating that the elevator platform was always at the first-floor level after he pushed the button and opened the door, he thought the door to the elevator could not be opened unless the platform was at his floor level. Furthermore, he thought there was a safety device which held the door closed until the elevator was level with the floor, before it could be opened. As a consequence, he says, at the time in question he was of the mind that the elevator platform was at the first-floor level when he opened the door, stood facing the shaft, and when starting his step forward before his attention was distracted. The elevator platform was not there. As a consequence, he fell into the basement pit and was injured.

Appellee charged three specific acts of negligence on the part of appellant as being the proximate cause of his injuries:

 (a) In failing to have the elevator, elevator opening, * * * guarded, * * * maintained and operated so as to be safe for the purpose for which it was used, as provided in Section 104.1, Code of Iowa, 1959, I.C.A.;

 (b) In failing to have the doors of the elevator equipped with a locking device which would prevent the opening thereof (except by key or special mechanism) unless the car was standing at the door, as required by Section 104.4, Code of Iowa, 1959, I.C.A.;

 (c) In failing to have proper light in and about the elevator, the shaft and appurtenances thereto.

He also alleged that as an invitee he was free from negligence in any manner causing the injuries he sustained.

All three of the above assignments of negligence, together with appellee's as-sertion of freedom from negligence, were conjunctively submitted to the jury, so that it had to find all four of the above propositions existed under the evidence adduced before it could return a verdict in appellee's favor, as it did.

Appellant seeks to have the judgment entered on the jury's verdict set aside on the ground that the District Court erred in failing to direct a verdict in its favor: (1) because appellee was contributorily negligent as a matter of law in not looking to determine whether the elevator platform was at his floor level after opening the door and before he stepped into the shaft; (2) that it was not negligent as a matter of law because the dangerous condition in the elevator shaft, after appellee opened the door, was apparent, obvious, and plainly visible, and therefore appellee was as well advised of the danger then confronting him, as was appellant, (3) that the District Court erred in the giving of certain instructions to the jury on the part of appellee and rejecting instructions as requested by it; and (4) because of prejudicial misconduct on the part of counsel for appellee during the course of the trial.

 █ In the light of appellant's presentation of assignments of error 1 and 2, *ante*, we think it should first be demonstrated that some factual matter which it argues as being relevant to any consideration thereof is not subject to judicial review. For instance, there is no contention made that the evidence adduced in this case was insufficient to establish appellant's violation of the elevator statutes of Iowa, supra; nor could there be, in the light of all the evidence adduced and particularly appellant's admissions of record as made in this case, which were read to the jury:

 " * * * that on March 21st, 1960, and at all times prior thereto, the elevator doors on the elevator on the main floor of defendant's store, the elevator in question in this litigation, could be opened by a person standing outside of the elevator by reaching through an opening in the door and releasing the bar latch located on the

inside of the elevator; and that this could be done whether the elevator was at the main floor or first floor, as it is sometimes referred to, or not; and that the defendant * * * was aware of this fact on or before March 21st, 1960, and at said time controlled and maintained the elevator."

By interrogatory propounded, appellant admitted that the elevator in question was not "equipped with automatic safety. devices which would prevent the entrance doors leading into the elevator from being opened when the elevator was not standing at the floor level where the doors were sought to be opened."

■ Hence, the elevator in question being one for use of "passengers", as the jury determined, there can be no legal issue subject to judicial review in this appeal in respect to appellant's violation of the elevator statutes of the State of Iowa, supra. This is so, (1) because the jury by its verdict necessarily found that appellant did violate such statutes, and (2) as said in the case of Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 26 N.W.2d 429 (1946), that issue was wholly one of fact for the jury. In the cited case the Supreme Court of Iowa, 238 Iowa at l. c. 447, 26 N.W.2d at 447 said:

"Under the record it was for the jury, and not the court, to determine whether (the) defendant had violated the provisions of (the elevator statutes). These statutes are for the benefit of all persons injured from their nonobservance. Hanson v. Kemmish, 201 Iowa 1008, 208 N.W. 277, 45 A.L.R. 498. A violation of them by * * * defendant would be negligence as a matter of law (citing cases). A disregard of the command of the statute is a wrongful act and an implied right of action accrues to one within its protection who is injured by the breach (citing cases). (Par. added.)

* * * * * *

"Whether all of (the) things had been done, as specified in and as re-quired by the statute, was a question of fact for the jury, and not of law for the court." (Par. added.) 26 N.W.2d l. c. 441.

The jury by its verdict resolved the above-mentioned factual issue in appellee's favor. Therefore, judicial review here begins with the established fact that appellant was negligent in maintaining the elevator in question so that the door thereto could be opened when the elevator was not at the first-floor level, in violation of Iowa's elevator statute, supra. That fact was unknown to appellee. His testimony established that he, at all times pertinent here, was of the opinion that the door to the elevator could not be opened unless the elevator cab was at his floor level.

[3] Another factual issue in this case was resolved by the verdict of the jury and therefore not subject to judicial review, * * * that is the issue of "insufficient illumination" in and about the shaft of the elevator. In any consideration of appellant's contention that it was "not negligent" or that appellee "assumed the risk" and was "contributorily negligent," the issue as to insufficient "illumination" in and about the elevator is now to be accepted as appellee's evidence disclosed that matter. We cannot substitute our judgment on that issue contra to the jury's decision, as appellant suggests we do.

■ Generally stated, it is the law of Iowa that the possessor of real estate is not liable to an invitee for a dangerous condition on its premises, where it is shown that the same was open, obvious and visible to an invitee so that the invitee had knowledge thereto, or in the exercise of reasonable care should have discovered the same; and was therefore as well informed of the danger as was the possessor of the premises. Such is the general rule considered by the Supreme Court of Iowa in relation to the issue of "primary negligence" on the part of the possessor of land, in the cases of Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252 (1957); Ander-

son v. Younker Brothers, Inc., 249 Iowa 923, 89 N.W.2d 858 (1958); and Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 110 N.W.2d 246 (1961), cited and relied on by appellant in support of its contention that it was "not negligent" under the facts here. We do not deem it necessary to sound the facts and law as considered and determined by the Supreme Court of Iowa in those cited authorities, because we think it is demonstrated in a more recent opinion of that Court that one essential factual issue present in the case at bar, namely, "insufficient illumination" was not an issue in the facts of those cited cases. Therefore, those opinions are clearly distinguished on their facts from those found to exist in the case at bar. Hence they cannot rationally be considered as containing statements of applicable law ruling the issue of appellant's claim of "non-negligence" as here made.

In the more recent case of Corkery v. Greenberg, 253 Iowa 846, 114 N.W.2d 327 (1962), the Supreme Court of Iowa had occasion to consider the three above-cited authorities in relation to a factual issue where the contention was made that a business invitee was as fully advised of a dangerous condition on the premises involved as was the operator of the premises. In that case the plaintiff, an invitee, fell and was injured in a parking lot during the night-time, due to ice and frozen ruts in snow which he alleged caused his fall because of insufficient lighting around the place where he was required to go to pay his parking fee. The appellant there contended that its invitee was as fully aware of such conditions as he was and therefore he, the appellant, was not negligent. The evidence revealed the invitee, Greenberg, had prior knowledge of the general conditions in the parking lot, but that the rut he stepped in, causing his fall, was not plainly visible because of "insufficient illumination" in that part of the parking lot where he had to go to pay his parking fee. In commenting on its previous rulings in the Atherton, Anderson, and Corrigan cases, supra, and distinguishing the

factual situation as to "illumination" not found to exist in those cited cases, from that existing in the Corkery case, the Supreme Court of Iowa had this to say:

"* * * In our three cases cited by defendants on the question of knowledge we find in the Atherton case the plaintiff had observed the defective condition of the step on previous occasions, she had been going to the store 'six months or a year or maybe several years.' She testified, 'It always looked treacherous * * *. I would say that it looked each and every time I would go in and out like it was a bad step.' In the Anderson case the absence of handrails and a 14 inch drop on the ends of the steps were claimed as negligence. The plaintiff had used the steps before and the condition was plainly visible. In the Corrigan case the plaintiff fell over a step to a temporary stage that was in plain view. Plaintiff was looking in another direction. *In these cases the condition complained of was in plain view and in Atherton and Anderson the plaintiffs had prior knowledge of the defect claimed. No question of illumination was involved and by the nature of the transactions the plaintiffs were not required to go to a certain place* for payment *as here*. In these three cases there was nothing present to alert the defendants the existing condition involved unreasonable risk to the plaintiffs, and one they had no reason to believe the plaintiffs would not discover. The plaintiffs did, or in the exercise of reasonable care should have discovered the condition of which they complained." (Par. and emp. added.) 114 N.W.2d l. c. 329, 330.

From the opinion in Corkery v. Greenberg, supra, we think it is clear that the issue of "illumination" in and about the elevator shaft in the case at bar was a question of fact for the jury.

From what is hereinabove said, there is no merit to appellant's contention that the District Court erred in failing to

declare as a matter of law that appellant was "not negligent" in the factual premise of this case. The issue as to appellant's violation of the elevator statute of Iowa, like the issue as to "illumination", was a question of fact for determination by the jury. On judicial review we must accept both such matters as established facts.

Manifestly, there is no merit to appellant's contention that appellee "assumed the risk" of injury under the facts here. No relationship of master and servant was shown to exist; nor is there any evidence in this record from which it can be said that appellee voluntarily exposed himself to injury. The defense of assumption of risk applies only where there is knowledge and full appreciation of danger. Westborough Country Club v. Palmer, 204 F.2d 143 (8 Cir., 1953).

In ruling appellant's motion n. o. v. in the case at bar, District Judge Stephenson considered the opinion of the Supreme Court of Iowa, in Hull v. Bishop-Stoddard Cafeteria, supra, to be controlling authority, precluding the granting of that after-trial motion. Both parties cite and rely on that Iowa authority in support of their *contra* positions in this appeal. They also cite us to numerous authorities from jurisdictions other than Iowa, addressed to the proposition . . . whether the appellee here was or was not free of contributory negligence as a matter of law . . . which is the primary issue for resolution in this appeal. Very apparently, from the memorandum opinion of District Judge Stephenson, (221 F.Supp. 944) those other state authorities were cited to and considered by him, and he deemed them to be inapposite to the Iowa rule laid down in Hull v. Bishop-Stoddard Cafeteria, supra, as follows:

"The issue of freedom from contributory negligence was a question of fact for the jury * * *. It is

usually so. Indeed (the Supreme Court of Iowa has said) it has uniformly and repeatedly held that it is the rare and exceptional case when that issue is a question of law." (Par. added.) 26 N.W.2d at 448, 449.

As a consequence it appears Judge Stephenson did not consider it necessary to follow these parties in all the argument they make as to the issue of contributory negligence as raised in this case, supported by authorities other than those of the Supreme Court of Iowa. Neither do we. If there can be any doubt concerning that matter, then in accordance with the well established rule of this Court, we "give great weight to the views of an able and experienced trial judge (as is Judge Stephenson) upon doubtful questions of local law." Anthony v. Louisiana & Arkansas Railway Company, 316 F.2d 858, 863 (8 Cir., 1963). There can be no question as to his expertise to determine and apply Iowa law in a diversity case. Homolla v. Gluck, 248 F.2d 731 (8 Cir., 1957).

Briefly stated, in Hull v. Bishop-Stoddard Cafeteria, supra, * * * a garbage collector, an invitee of the cafeteria for that purpose, fell down an elevator shaft under circumstances remarkably similar to those appearing in the case at bar. Issues of law concerning Hull's "assumption of risk" and "contributory negligence," as well as the claim of the cafeteria that it was "not negligent," in the factual premises of that case, were with finality thoroughly sounded and pronounced in that opinion with keen legal acumen.[2] The accident in that case occurred when Hull stepped through an open elevator door, after his attention was momentarily diverted by a passing conversation he had with a young lady. Hull testified that he looked and thought he saw the elevator present at his floor level. Substantially, because of Hull's reliance on that illusion; the distraction

2. When that case was first before the Supreme Court of Iowa the trial court's action in directing a verdict against Hull was affirmed in an opinion to be found at 24 N.W.2d 364. A rehearing was granted and thereafter the decision of the trial court was reversed, at 26 N.W.2d 429.

of his attention from the shaft; and his previous experience with the elevator * * * to the effect that he had never before seen the elevator gate open in the absence of the cage at his first floor level, * * * the Supreme Court of Iowa ruled the issue as to the cafeteria's negligence was factually established; that Hull's contributory negligence could not be determined as a matter of law; that both such matters presented questions of fact for determination by the jury; and the jury, under the facts there, was warranted in returning a verdict for Hull.

The evidence in the case at bar clearly establishes that when appellee was injured he followed his usual routine in using the elevator as an invitee in appellant's premises. He approached the elevator to use it as a passenger. The door thereto was closed. Being a passenger elevator, as the jury found, the Statutes of Iowa required that it be equipped so that the door thereto could not be opened unless the platform thereof was level with the landing floor when the door was opened. Appellee's experience and knowledge as to the operation of the elevator was in harmony with the mandate of the elevator statutes of Iowa, supra. Believing that the elevator was in the shaft, he reached into the aperture and pushed up on the arm latch. He found it could, and did, open the door. The elevator cage in question was open at both the front and rear sides. The only door thereto was in the shaft wall. When that door was opened, vision at eye-level was to the rear wall of the shaft, whether the platform of the elevator was there or not. Appellee's evidence was to the effect that because of "insufficient illumination" in the shaft he had to "look hard" down at the floor of the elevator to see if the cab was present therein. After he opened the door and before his vision was distracted, appellee was at all times facing the shaft. From his testimony as a whole, we think the jury could reasonably find that before he started to step forward his vision was into the shaft of the elevator, and from all his surrounding circumstances he reasonably had cause to believe the elevator was there, but the danger in the shaft was not reasonably apparent and obvious because his attention was distracted therefrom, for no cause of his own making.

Appellant's argument is summed up by it thus: "The fact of appellee's failure to make any observation is the crux of this lawsuit * * *." Under the facts here the jury could as it apparently did reasonably determine that appellee did make some observation into the shaft at the time he stood facing the elevator shaft, because it is manifest that the vision of his eyes was then into the shaft.[3] It could reasonably find as it did, because of "insufficient illumination" in the shaft he was unable to then plainly see the danger confronting him. "Vision literally means the act of seeing with the

3. The narrative statement in the printed record recites appellee testified "he did not look to see" if the elevator was there at the time he was injured. That statement was challenged by appellee. Consequently he filed a verbatim copy of a part of his testimony revealing that he did "look" into the shaft before he was injured. In its reply brief appellant undertook to establish that when appellee so testified he had reference to appellee's prior use of the elevator, when he returned thereto with the empty cases, and not at the time he was injured.

Throughout its narrative statement of appellee's testimony as given at the trial, appellant interchangeably uses "look" for "see" and at times conjunctively states those terms as "look to see." We note this matter because, lexicographically speaking:

"*Look* bears to *see* the same relation that *listen* bears to *hear;* in each case the first term suggests preparation for the second. To *look* is to fix the eyes upon something or in some direction * * *. It implies a desire to see, but not necessarily the fulfillment of that desire." (Dict. of Contemp. Am. Usage, p. 283, Evans, Random House.) Though we do not consider the terminology of the narrative statement decisive here, we think that in the light of the challenge here made to the printed record it would have been more appropriate for appellant to have supplied a verbatim transcript of that part of the record challenged, than as was done.

eye." We emphasize that matter because this case was tried by these parties on the theory that appellee's contributory negligence did not commence until after appellant's violation of the elevator statutes, supra, was established, and the "sufficiency of illumination" in the elevator shaft was an important question for determination by the jury. This may best be demonstrated by that part of an instruction proffered by the appellant appearing in the record (but not given) [4] wherein it posited a finding to be made by the jury, as follows:

> "If you find from the evidence that the defendants have failed to construct, guard, equip or maintain their elevator so as to make it safe for the purpose for which this elevator was used, you will then find that the defendants were negligent unless you find from the evidence that the danger which faced the plaintiff when the elevator doors were opened was obvious and reasonably apparent or was a danger which would be observed by the plaintiff in the exercise of ordinary care in which event you will then find that the defendants were not negligent and your verdict shall be for the defendants."

■ Appellee's theory of claim that any consideration of his contributory negligence as a matter of law could only commence after the elevator door was opened in violation of the elevator statutes of Iowa, supra, is legally to be sustained by Iowa case law. Cf. Hull v. Bishop-Stoddard Cafeteria, supra; Flattery v. Goode, 240 Iowa 973, 38 N.W.2d 668 (1949); and Burger v. Omaha & C. B. St. R. Co., 139 Iowa 645, 117 N.W. 35 (1908). In the last-cited case, a question of proximate cause * * * "simple in its last analysis" * * * was considered by the Supreme Court of Iowa. A query made in search for an answer thereto was stated by that Court, as follows:

> "Where did the force which led up to and culminated in the accident which

befell plaintiff have its origin?" (117 N.W. l. c. 37.)

We proffer that same question here. The only answer to be made is: In appellant's violation of the elevator statutes of Iowa, as determined by the jury. Appellant concedes that to be so, by its proffered instruction, *ante*. Contributory negligence is bounded by Iowa case law, as follows:

> " * * * it is the law, as universally applied, that where one by his negligent act thrusts another into a position of danger, the act—and the negligence by which it is clothed—continues and controls as long as the danger continues, unmodified by any independent, affirmative, and voluntary act on the part of the person affected, or by some intervening controlling circumstance. And it is for the jury to say at what point or juncture, and in what particular, such person ceased to be dominated in his conduct by the act of negligence, and resumed voluntary control over his own actions." Burger v. Omaha & C. B. St. R. Co., 117 N.W. 35, l. c. 37, cited with approval in Flattery v. Goode, supra, 38 N.W.2d at l. c. 670.

■ The focal point of appellee's conduct to be considered in relation to any contributory negligence on his part revolves around the factual issues of "insufficient illumination" and "distracting circumstances" after he opened the door to the elevator. In the case of Hull v. Bishop-Stoddard Cafeteria, supra, (26 N.W.2d l. c. 450), it is said; quoting from Wheeler v. Sioux Paving Brick Company, 162 Iowa 414, 142 N.W. 400, 406:

> "The authorities generally are to the effect that one whose attention is diverted is not to be held to the same closeness of observation as he would otherwise be; and where his act, but for such diverted attention, would have been negligent, upon proof tending to show conditions

---

4. Appellant's objection on that score is hereinafter considered.

throwing him off his guard, the question of his negligence is one for the jury. Taylor v. Wabash Ry. Co., 112 Iowa [157], 160, 83 N.W. 892, and cases cited; Lorenz v. B., C. [R] & N. Ry. Co., 115 Iowa, 377, 88 N.W. 835, 56 L.R.A. 752; Marinan v. C., R. I. & P. Ry. Co. [156 Iowa 457], 136 N.W. 884. * * * There is a clear distinction between forgetfulness which, unless there are circumstances that excuse it, is one phase of negligence, and a sudden arising of conditions which throw one off his guard, and for the moment without fault on his part divert his attention from a danger not forgotten, but guarded against."

The danger in the case at bar could not have been forgotten. It is a question as to whether it was reasonably apparent to him after he opened the door to the elevator, which clearly was an issue of fact for the jury. Not being reasonably brought to appellee's attention because of "insufficient illumination," as the jury found, he cannot now be convicted because of negligence as a matter of law for attempting to use the elevator as a passenger as he previously had done. Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N.W. 515 (1934), does not compel a *contra* ruling as appellant contends. The facts involved in that case are clearly distinguished from those in the case at bar. We can find no merit to appellant's contention that the District Court erred under Boles v. Hotel Maytag Co., supra, in submitting the issue of its "negligence", as well as the issue of appellee's "contributory negligence" to the jury for determination, in light of the factual premise in the case at bar, and controlling Iowa law.

Appellant's contention that the District Court erred in the giving of its charge to the jury, is in part premised in the proposition that it did not state the law to the facts here as laid down in Atherton v. Hoenig's Grocery, and Corrigan v. Younker Brothers, supra. Corkery v. Greenberg, supra, demonstrates the er-

rancy of appellant's contention in that regard.

 Appellant's proffered Instruction No. 9 was not given "because of its form." By that instruction appellant, among other things, sought to confine the issues in this case to a singular violation of Section 104.1 of the Code of Iowa, I.C.A. Appellant's contention, "there is no evidence in this record which would indicate that this was a passenger elevator," within the purview of Section 104.1 of that Code, is without merit. There was evidence to the effect that appellee was using it as a passenger elevator when he was injured, as he previously had done, with appellant's knowledge, as did other invitees to its premises under similar circumstances, as well as its employees. Whether that was so was a question for the jury.

 Another contention made by appellant is that the District Court, by its Instruction No. 7, did not set forth the fact that if the danger which confronted appellee was "reasonably apparent, or as well known to appellee as (it was) to the defendant, or if the appellee would have discovered said danger by the exercise of ordinary care that the appellant would not be negligent." There is no merit to such contention. As Judge Stephenson said in his memorandum, supra:

"(The) Court instructed the jury that the burden was on the plaintiff to prove by a preponderance of the evidence his freedom from contributory negligence and in this connection instructed further as follows:

" 'You are instructed that it is the law of this state that no person is entitled to recover damages caused by an accident to which his own negligence in any way or in any manner directly contributes. This law is applicable to the plaintiff in this case.

" 'It is for you to determine from all of the evidence presented in this case whether or not the plaintiff, in the manner in which he attempted to

use the elevator at the time of the accident, was guilty of any negligence or failure to use ordinary care, which in any way or in any manner directly contributed to the accident.

"'The duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger. A person is required to make reasonable use of his faculties of sight, hearing and intelligence to discover dangers and conditions of danger to which he is or might become exposed.'"

He also specifically told the jury an invitor "is entitled to assume that the invitee will see and observe that which would be obvious through reasonably expected use of an ordinary person's senses. There is no duty to give the invitee notice of an *obvious* or reasonably apparent danger." The District Court was not required to specifically direct the attention of the jury to any particular factual situation, when its charge as a whole required a finding in respect to all elements of applicable law to the facts as adduced before the jury. It is manifest that there is no merit to appellant's contention that the District Court erred in its charge to the jury as here claimed.

▮ Lastly, appellant asserts the Court erred in failing to grant it a "new trial on the ground of misconduct of appellee's counsel." The granting of a motion for a new trial on that ground is wholly within the discretion of the trial court. In his memorandum, supra, Judge Stephenson had this to say as to appellant's claim of misconduct on the part of appellee's counsel:

"During the course of the trial the Court ruled that plaintiff would not be permitted to offer any evidence of changes that were made in the elevator door after the accident, and specifically warned plaintiff's counsel not to bring up this matter in argument. Defendant claims that counsel violated this admonition of the Court in final argument to the jury.

In rebuttal argument, counsel for the plaintiff made some reference to the lack of gates in the forepart of the elevator, as contrasted to the gate portrayed in a photograph which was in the rear part of the elevator. This photograph was received in evidence without objection. It is now conceded that the gate shown in the elevator was not placed therein until after the accident. The Court does not consider this reference to the photograph to be sufficiently prejudicial to warrant a new trial. No direct reference was made to any change after the accident. Under the circumstances the Court does not consider counsel violated the Court's admonition. The questioning by counsel for the plaintiff which is now complained of took place out of the presence of the jury. The Court does not recall any instance where plaintiff's counsel attempted to interrogate witnesses regarding matters forbidden by the Court."

We have thoroughly considered all contentions raised by appellant in this case and have examined the record to find support therefor. We are satisfied that counsel for appellant have misconceived applicable Iowa law. Their briefs deal at length with issues of law as raised in jurisdictions other than Iowa. As hereinabove established, this case was tried on the theory as one where the door to an elevator was opened before any danger became apparent to appellee. No error was committed in the Court's charge as that matter was submitted to the jury for determination.

As we had occasion to say, through Judge Blackmun, in Hanover Insurance Co., Mass. Bond. Dept. v. Travelers Indem. Co., 318 F.2d 306, 311 (8 Cir., 1963):

"Here, as in many other diversity cases, we cannot say that Judge (Stephenson) did not reach a permissible conclusion, particularly in the light of the (Hull) case, as to (Iowa) law. Certainly no (Iowa) case demonstrates that his conclu-

sion is based upon a clear misconception or misapplication of the law of that state." .(Citing cases.) (Par. added.)

Judgment affirmed.