96

GROSSNICKLE ET AL., APPELLEES, *v.* VILLAGE OF GERMANTOWN, APPELLANT.

[Cite as Grossnickle v. Village of Germantown, 3 Ohio St. 2d 96.]

(No. 38695—Decided July 7, 1965.)

98

*Messrs. Baggott, Logan & Gianuglou* and *Mr. Horace W. Baggott,* for appellees.

*Messrs. Harshman, Young, Colvin & Alexander* and *Mr. Robert C. Alexander,* for appellant.

SCHNEIDER, J.  The cases and comments abound with discussion as to which view of the "per diem" or "mathematical" argument represents the weight of authority in this country. See Annotation, 60 A. L. R. 2d 1347, 1350; 28 Univ. of Cincinnati L. Rev. 138. Nevertheless, a majority of this court is persuaded to adopt a rule favorable to its use, under proper circumstances, by the force of the reasoning expressed in a number of opinions of our sister state courts. *Corkery* v. *Greenberg,*

253 Iowa 846, 854, 114 N. W. 2d 327;[1] *Caley* v. *Manicke*, 29 Ill. App. 2d 323, 336, 173 N. E. 2d 209;[2] *Four-County Electric Power*

[1]"The task presented to the jury is to determine the amount in dollars and cents to be awarded for pain and suffering and future disability. The reasonable sum to be awarded is not subject to direct proof and is from necessity left to the sound discretion of the jury. * * * The evidence of the injury and its past and present effect are before the jury as is its probable future effect. The task of the lawyer is to assist the jury in reaching a verdict. In doing this a suggestion of the manner in which the lawyer reached the amount asked without more cannot invade the province of the jury. The jury must reach their verdict by reasoning and drawing inferences. The per diem argument is nothing more than a suggestion of a course of reasoning from the evidence of pain and disability to the award. No reason is suggested why it would be proper to consider the total sum asked over the period of life expectancy and not for a portion of that period. In some cases it might well be that by showing the amount asked on an hourly or daily basis the unreasonableness of the amount asked would be apparent, and a reasonable amount suggested." *Corkery* v. *Greenberg*, 253 Iowa, 846, 854, 114 N. W. 2d 327.

[2]"* * * Arguments must be based on the evidence. Facts in evidence may be pieced together to form such argument. The argument that results is not evidence. The facts here are that pain and suffering existed and that legally, hence logically, they are worth money. Certainly, if it is within the ambit of proper argument to take this fact, apply the law and argue for a given total, then the method of arriving at the total would, we think, be proper argument too. If the jury can hear the whole, why not its parts? Total amounts necessarily are composed of lesser amounts. What is wrong in knowing what they are?

"* * *

"We agree * * * that the very absence of a standard relative to pain and suffering, argues loudly for the rule giving counsel full latitude in exploring and discussing this element of damages. To deny the use of the per diem argument seems to us a curtailment of the right of argument since it precludes the use of a persuasive technique, and what is argument if it does not persuade. * * * All persuasive techniques are not countenanced, but persuasive techniques that remain within and are a part of the traditional role of argument are proper and novelty is certainly no reason for nonacceptance.

"Pain and suffering in the law of damages are probably unique in that they are non-certain and non-punitive. But unique or not they exist. Damages for hospitalization, property damage, and loss of work, to mention but a few are easily ascertainable; even exemplary and punitive awards can be approximated by a showing of the defendant's worth. In every law suit such as this, damages are compounded of the so-called 'specials,' and then to varying degrees, of those elements that defy monetary exactitude.

*Assn.* v. *Clardy,* 221 Miss. 403, 430, 73 So. 2d 144.[a]

Some of the more serious considerations advanced against permitting the argument are that (1) it displaces the common knowledge and experience possessed by a jury of the nature of pain and suffering, (2) it ignores the fact that pain is generally intermittent, (3) it makes no allowance for a discount for the present use of the total award, and (4) it stretches speculation to absurdity in that pain measured by, for example, a penny a second is equal to $31,536 a year.

These objections will be disposed of in the same order: (1) The practical fact is that no one intimately experienced with a situation similar to that of the plaintiff in any case would be permitted to sit on a jury; hence, the average juror is unacquainted with the type of pain or suffering which he is called upon to translate into monetary value. (2) Intermittent *pain* may be, but *suffering* the loss of a member or of normal activities is continual. (3) An award in gross is never discounted by the court and, if by the jury, the factor used is never disclosed.

---

Pain and suffering and future disability come immediately to mind. These have an elusiveness that defies immediate or even mediate reduction to dollars and cents. For that reason, the very lack of definitive criteria, no monetary admeasurement in terms of evidence is admissible. There are no experts in this field, no books, no charts, no tables that are authoritative. True, courts can tell when too much is too much or too little is too little. But within the bounds of too little and too much there is an area where discretion is at large, and this is a reason in itself, at least to the extent we have indicated here, that argument should have full sway.

"We summarize briefly our reasons for holding the per diem argument acceptable: In the first place, such an argument can suggest valid considerations for rendering the abstraction of pain and suffering comprehensible for concrete translation into dollars; Secondly, the argument is logically suggested by the evidence when read in context with the monetary determination that must be made; Thirdly, this line of argument falls within hitherto accepted bounds of advocacy and it is not apparent to us where it now o'er leaps them." *Caley* v. *Manicke,* 29 Ill. App. 2d 323, 336, 173 N. E. 2d 209, 215, 216, 217.

[a]"Plaintiff's counsel has a right to state his case orally and to outline the evidence by which he expects to sustain it. He would have a right to state orally and in detail what damages he expected to prove, and he would have the right to take a pencil, list those items of damages, and show that sheet of paper to the jury in the opening statement and arguments. So we cannot see any reason why counsel should be denied the equivalent right to

(4) The absurdity of any hypothesis is fair game for the opposing party. *Caley* v. *Manicke, supra* (29 Ill. App. 2d 323).'

The position against the argument in question comes close to a position against any monetary recovery for pain and suffering whatsoever, which of course, is not urged here.

We do not think impropriety could have been seriously urged with respect to counsel's reference to plaintiffs' pre-injury earnings of $35 a week in seeking compensation for future loss of earnings. That she had earned that amount was in evidence. But, that she could have earned the same amount for every remaining year of her life until normal retirement was merely counsel's suggestion of a weekly rate upon which the jury was permitted to base its verdict. Just as permissible was counsel's suggestion of a daily monetary amount which, when multiplied by a factor fairly reflective of the probable duration of pain and suffering, illustrated the basis for the total amount sought as compensation for that loss.

Counsel did not misrepresent the evidence. The jury could not have been deceived into accepting the argument as evidence, particularly in view of the timely caveat in the charge of the court that the arguments of counsel were not evidence in the case.

However, most of the cases favoring permitting the argument and the better logic supporting them are based, in part, on the equal opportunity afforded the defense for counter-

prepare in advance a chart outlining what he expects to prove, and to use it in the opening statement and in the arguments. With reference to the figures claimed by appellee for pain, suffering and mental anguish, there was no evidence on any monetary amount, but the undisputed record showed that appellee suffered and will continue to suffer excruciating and long-continued pain. Counsel had the right to state to the jury what he thought would be proper damages for the jury to award for this item, in his opening statement and arguments." *Four-County Electric Power Assn.* v. *Clardy,* 221 Miss. 403, 430, 73 So. 2d 144.

4"'* * * An argument in mitigation of damages can be successfully made without implying an admission of liability. Trial counsel have been doing it for years and we can see no reason why a per diem argument renders it less likely. * * * We are certainly not going to arrogate ourselves to the judgment of trial counsel as to what a proper counter-argument might be, but we are convinced of this, it can and will be devised. *Caley* v *Manicke,* 29 Ill. App. 2d 323, 337, 173 N. E. 2d 209, 217.

argument. Here, plaintiffs' counsel held back until his closing argument, thus depriving the defense of its rebuttal. We believe this went beyond the limits of propriety.

On the other hand, appellant makes no objection to the timing of the argument and claims no prejudice on that ground. We, therefore, find none in this case. Appellant makes no claim that the verdict was excessive, and we cannot find that it was. See Paul W. Brown, J., in *Hall* v. *Burkert*, 117 Ohio App. 528, at page 530: "The risk of overpersuasion resulting in excessive verdicts is counsel's risk. Such a verdict, however, is to be judged on appeal by its excessiveness under all the evidence, applying the usual tests."

On this state of the record, we can only say that the judgment here is not invalid merely because the argument was made, in the absence of an objection on the ground of surprise or improper timing and in the absence of a request by appellant to counter-argue.

Although the foregoing disposes of the question upon which this cause was certified to the court, the entire record being now before us (*Couk* v. *Ocean Accident and Guarantee Corp., Ltd.*, 138 Ohio St. 110), we consider appellant's contention that final judgment should have been rendered in its favor upon authority of *Conneaut* v. *Naef*, 54 Ohio St. 529; or alternatively, that a new trial should have been granted for the refusal of the trial court to give appellant's Special Instruction B based on the syllabus of *Conneaut* and in the following form:

"The court charges you as a matter of law that the plaintiffs cannot recover in this case if Mrs. Grossnickle voluntarily walked upon an accumulation of ice which was plainly visible. If you find by preponderance of the evidence that she did so, then you are instructed that you must return a verdict for the village of Germantown."

The first consideration in this kind of case invariably is whether the hazard was seen or unseen. If seen, there is, of course, a duty to avoid it. In *Conneaut*, the plaintiff apparently did not claim a lack of knowledge of, or a failure to observe, the ridge of ice several inches in height extending across his path along the sidewalk over which he tripped. Similarly, in *Schaefler* v. *Sandusky*, 33 Ohio St. 246 (upon which *Conneaut*

was based), plaintiff was walking on a slush and ice-covered sidewalk when he slipped and fell. No claim there was made that the danger was unobserved.

Neither of those cases contains the element of distracted attention as an excuse for failure to observe the danger. They exemplify the doctrine that one who assumes, voluntarily, a known hazard must accept the consequences even though he may have exercised the utmost care. See *Indiana Natural Gas & Oil Co.* v. *O'Brien*, 160 Ind. 266, 65 N. E. 918, 66 N. E. 742; *Hunn* v. *Windsor Hotel Co.*, 119 W. Va. 215, 193 S. E. 57.

Here, where the claim is that the danger was *unseen* (and appellant does not insist that it was) the more difficult question arises as to the breach of duty which occasions the failure to see. The evidence sufficiently established an issue for the jury as to whether plaintiff exercised that concern for her own safety which an ordinarily prudent person would employ under similar circumstances.

The trial and appellate courts could not ignore, as we cannot, that when plaintiff arrived at the point of danger from the sheet of ice on the sidewalk, just several steps from the street intersection which she proposed to enter, she had the right and, indeed, the duty to concern herself as much with steadying herself and her clothing against the wind, observing the traffic signal in the center of the street and searching for possible traffic turning into her path, as with the conditions under foot.

"The authorities generally are to the effect that one whose attention is diverted is not to be held to the same closeness of observation as he would otherwise be; and where his act, but for such diverted attention, would have been negligent, upon proof tending to show conditions throwing him off his guard, the question of his negligence is one for the jury." *Wheeler* v. *Sioux Paving Brick Co.*, 162 Iowa 414, 142 N. W. 400 (attention diverted from dangerous machinery by the approach of a car). See *Flattery* v. *Goode*, 240 Iowa 973, 38 N. W. 2d 668 (attention diverted from starting of machinery by sticking of tailgate of truck); *Bartels* v. *Cair-Dem, Inc.*, 255 Iowa 834, 124 N. W. 2d 514 (attention diverted by display counter); *Deane* v. *Johns-*

*ton* (Fla.), 104 So. 2d 3 (attention diverted by employer calling name of plaintiff); *Merchants Ice & Cold Storage Co.* v. *Bargholt*, 129 Ky. 60, 110 S. W. 364 (attention diverted to a building which was under discussion); *City of Dayton* v. *Lory*, 169 Ky. 94, 183 S. W. 252 (attention diverted by observation of daughter's activities). See also 25 American Jurisprudence 760, Highways, Section 468; 38 American Jurisprudence 864, Negligence, Section 187; 27 Ohio Jurisprudence 2d 426, Highways and Streets, Section 310.

"If visibility alone settled contributory negligence every case of * * * encountering any stationary object would automatically be a case of non-liability for in all of these cases the condition which caused the harm was visible. The question always is whether the plaintiff used due care for his own safety, taking into account all of the circumstances, of which the visibility of the object encountered is an important one, but still only one of the circumstances.

"The question is whether one should be aware of the danger. This depends largely upon the likelihood of encountering danger. Very rarely do objects from above cause us harm, so persons are not careless who do not go about examining the sky. One need not look for danger unless there is reason to expect it." *City of Jacksonville* v. *Stokes* (Fla.), 74 So. 2d 278.

The rule is not abrogated because the pedestrian might have been familiar with the condition of the sidewalk on prior occasions, since knowledge of that condition, however important, is only a fact to be considered by the jury. *Elwell* v. *Town of Athol*, 325 Mass. 41, 88 N. E. 2d 635.

Here the trial court charged the jury in special instruction No. 2 as follows:

"Pedestrians on sidewalks are not required, as a matter of law, to keep their eyes continually sighted on the walk. They are required only to exercise such watchfulness and care for their own safety as persons of ordinary carefulness and prudence would observe under the same or similar circumstances."

In special instruction No. 6, the court charged: "The court charges you as a matter of law that, if you find by a preponderance of the evidence that Hazel E. Grossnickle was negligent in any way which directly caused or contributed to the

cause of the accident in which she was injured, then you are instructed that you must bring in a verdict for the village of Germantown, even though you find that the village of Germantown was also negligent."

Similar language was used in the general charge. Thus, the jury was correctly apprised of the duty which the law expects of a pedestrian for her own safety. Every possible conclusion favorable to appellant was available to the jury.

On the other hand, to have given the charge which was requested, but refused, and which was taken from a case in which there was no evidence of distracting elements, would have precluded a finding that the appellee in the exercise of reasonable and ordinary care under the circumstances would not have seen the source of the injury. It is within the province of the jury to make that finding and it did so find in this case.

For the foregoing reasons the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

MATTHIAS, HERBERT and BROWN, JJ., concur.

TAFT, C. J., concurs in paragraph one of the syllabus down to the word "but"; but dissents from the judgment for the additional reason that the special instruction B should have been given.

ZIMMERMAN and O'NEILL, JJ., dissent.