OPINION
On July 8, 1993, at approximately 8:45 p.m., appellants, Marilyn L. Crow and her husband, were shopping at appellee's store, The Andersons. While walking near the end aisle display unit, Marilyn slipped and fell, suffering a broken hip and other injuries; she required surgery and follow-up treatment.
The undisputed facts show that earlier in the day, one of appellee's employees knocked a bottle full of olive oil from its display shelf. The ensuing spill was cleaned up by appellee's employees and a "wet floor" sign was placed in the area. Later in the day, one of appellee's employees noticed that the floor was still oily. The employee again worked on the spill area, this time using a 409 cleaner. Satisfied that the floor was clean, the employee returned to his normal duties. Despite these efforts, Ginger Scheuerman (another employee) found that the spill area was again oily at approximately 5:00 p.m. Scheuerman noticed that the oil was seeping out from under the display shelf. In response, she mopped the area with hot water, Lysol, and a general all purpose cleaner. No effort was ever made by the employees to disassemble the display shelf and clean the area from which the oil was seeping, although it was admitted on deposition that it would have been possible (albeit difficult) to do so. In any event, Scheuerman supposedly returned to the area at 8:00 p. m. and found the floor to be oil free but damp. Forty five minutes later Marilyn Crow fell.
Appellants sued The Andersons, seeking compensation for Marilyn's injuries and her husband's loss of consortium. Appellee answered and filed a third party complaint against the three manufacturers of the cleaning products used. Depositions of appellee's employees were taken and filed with the court.[1]
Appellee Andersons then moved for summary judgment, noting that appellant did not know why she fell. Because she lacked this knowledge, appellee maintained that she could not show the existence of a dangerous condition or that appellee knew of such condition.
The trial court granted summary judgement in favor of appellee Andersons. The third party defendants were then also granted summary judgment.
Appellant now appeals that judgment, arguing that summary judgment was improper because genuine issues of material fact remain in dispute.
Summary judgment is controlled by Civ.R. 56(C), which states in pertinent part:
 "* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"
When considering a motion for summary judgment, a court must view the evidence and all inferences drawn therefrom in a light most favorable to the nonmoving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
In order to defeat a motion for summary judgment in a negligence action, a plaintiff must present evidence that the defendant owed the plaintiff a duty. Keister v. Park Centre Lanes
(1981), 3 Ohio App.3d 19, 22. The plaintiff must then demonstrate sufficient evidence from which reasonable minds could infer or dispute that the duty was breached and the breach was the proximate cause of the plaintiff's injuries and resulting damages.Porter v. Miller (1983), 13 Ohio App.3d 93, 96; Keister, supra at 22-23.
Business owners owe a duty to business invitees to keep premises in a reasonably safe condition. Paschal v. Rite AidPharmacy, Inc. (1985), 18 Ohio St.3d 203. However, business owners are under no duty to protect business invitees against dangers which are known to such invitees or which are so obvious and apparent to such invitees that they may reasonably be expected to discover and protect against such dangers. Sidle v. Humphrey
(1968), 13 Ohio St.2d 45, paragraph one of the syllabus. The question of whether one should be aware of the danger "depends largely upon the likelihood of encountering danger." Grossnicklev. Village of Germantown (1965), 3 Ohio St.2d 96, 104; Kissel v.Michel Corp. (Aug. 20, 1993), Fulton App. No. 92FU000021, unreported.
In addition, where a plaintiff is unaware of what caused the fall, the plaintiff must produce evidence as to proximate cause which demonstrates some negligent act or omission. See J.C.Penney Co., Inc. v. Robison (1934), 128 Ohio St. 626 paragraph four of the syllabus.
In the present case, appellee had a duty to provide reasonably safe aisles for its customers. We begin our analysis by noting that oil spilled in the aisle of a grocery store is, by its very nature, hazardous. Here, it is undisputed that appellee had clear notice of the hazard. As such, it had a duty to warn its customers of the danger and timely remove the hazard. In this case, appellee placed a "wet floor" sign in the area of the spill and undertook efforts to remove the spilled oil. The issue, as we see it, then becomes whether appellee's efforts restored its premises to a reasonably safe condition or whether its efforts fell short of that standard because it was negligent in the clean-up process it employed.
For summary judgment purposes, we cannot say that appellee's efforts created a reasonably safe condition. It is undisputed that Marilyn Crow's fall occurred at the spot where the olive oil spilled. It is also undisputed that, despite the efforts of appellee's employees, oil seeped out from beneath the display unit. The floor was cleaned and mopped twice after the original clean-up: the first time at approximately 1:00 p.m. by a department manager and another employee. Later that day, between 4:30 and 5:00 p.m., a third employee, Ginger Scheuerman noticed oil seeping from under the right and front base areas of the display unit. The oil had seeped out two to three inches from the baseboard.
Before cleaning the area, Scheuerman said she cleaned the mop and bucket of "dirty and smelly" water that had oil floating on it. She stated that she then mopped the floor, but when she checked it with her hand, she detected more oil. Scheuerman then mopped it a second time. Satisfied that it was clean, Scheuerman returned to her other duties at approximately 6:30 p.m., leaving the bucket and mop and "wet floor" sign sitting over the area.
In her deposition, Scheuerman stated that she rechecked the spill area at about 8:00 p.m. She stated that another employee also verified that the area was clean.[2] Scheuerman also said that she rechecked the area after appellant's fall, but did not detect any oil in the area. However, according to her written report made two days after the incident, Scheuerman did not check the area again that evening.
The employees, including the assistant manager, also testified that appellee could have dismantled the lower display shelf to check for oil and thoroughly clean under it. Furthermore, even presuming the floor was checked at 8:00 p.m., Mrs. Crow did not fall until forty-five minutes later. Thus, because of the earlier spill, the repeated seeping oil and the difficulties in cleaning it completely, the unwillingness to dismantle the display shelf, and the conflict in the testimony as to whether the area was checked after 6:30 p.m., one can infer that olive oil may have once again seeped out, causing Marilyn Crow to slip and fall.
In addition, although a warning sign had been placed at this area, it warned that the floor might be "wet," not oily. Crow had no way of knowing about and protecting herself from slipping on what may have been an invisible film or seepage of olive oil. Therefore, construing the evidence and all inferences in a light most favorable to the nonmoving party, we conclude that genuine issues of material fact remain in dispute as to whether appellee negligently failed to use appropriate clean up procedures and whether such negligence was the cause of appellant's fall. Therefore, the trial court erred in granting summary judgment in favor of appellee, The Andersons.
Accordingly, appellants' sole assignment of error is well-taken.
The judgment of the Lucas County Court of Common Pleas is reversed and remanded for proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
 Peter M. Handwork, P.J.
 James R. Sherck, J.
CONCUR.
Richard W. Knepper, J., dissents.
[1] We note that appellant filed a "motion for reconsideration" which included appellants' affidavits. However, since these were not presented to and considered by the trial court prior to its determination of summary judgment, we may not consider it on appeal. See State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus.
[2] This employee stated in his deposition that Scheuerman asked him to check the floor area around 4:30 or 5:00 p.m.