FIORINI, Appellee and Cross–Appellant,

v.

WHISTON, Appellant and Cross–Appellee.

[Cite as *Fiorini v. Whiston* (1993), 92 Ohio App.3d 419.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C920678, C920691 and C920710.

Decided Dec. 8, 1993.

420

*Henry D. Acciani,* for appellee and cross-appellant.

*Alan R. Trenz,* for appellant and cross-appellee.

DOAN, Judge.

On July 29, 1988, plaintiff-appellee and cross-appellant Frank Fiorini was injured when a pickup truck driven by defendant-appellant and cross-appellee Lacey Whiston came in contact with the motorcycle Fiorini was operating. On August 4, 1988, Fiorini went to the emergency room of a local hospital where he was diagnosed with acute ankle/elbow contusion. Fiorini testified that about three or four months later he noticed that the pain in his back he had experienced after the accident had gradually worsened. On February 24, 1989, and in March 1989, Fiorini sought medical treatment from a Dr. Simon. In December 1989, he received treatment at Affordable Chiropractic for, among other things, his cervical spine and lower back. In February 1990, Fiorini sought treatment from a Dr. Winston, who prescribed a transcutaneous nerve stimulator unit for his lower back. His last visit to Dr. Winston was in December 1990.

Fiorini filed his complaint on July 10, 1990. On January 28, 1991, the case was referred to arbitration and, on September 5, 1991, the arbitration report and award was entered in favor of Fiorini for $9,323.15. On October 2, 1991, a notice of appeal of the arbitration report and award was filed by Whiston and the cause went to trial before a jury in May 1992. The jury returned a verdict of $12,000 in favor of Fiorini. Fiorini then filed a motion for prejudgment interest pursuant to R.C. 1343.03(C). The trial court conducted a hearing and awarded Fiorini prejudgment interest from September 5, 1991, the date of the arbitration. The trial court entered final judgment on September 1, 1992. Whiston filed timely appeals from both the trial court's September 1, 1992 judgment entry (No. C–920691), and its August 3, 1992 entry and opinion for prejudgment interest (No. C–920678). Fiorini filed a timely cross-appeal from the September 1, 1992 judgment entry (No. C–920710). These appeals were consolidated by this court *sua sponte* in our September 30, 1992 order.

In his appeal Whiston raises seven assignments of error. In his first five assignments of error and his seventh assignment of error, respectively, he contends the trial court erred to his prejudice in the following actions: overruling his motion for directed verdict, overruling his motion *in limine* and admitting into evidence the office records of the chiropractor, admitting into evidence Fiorini's chiropractic bills, admitting the opinion of Dr. Winston regarding the

proximate cause of Fiorini's medical condition, admitting testimony regarding Fiorini's lack of medical insurance, and awarding prejudgment interest. In his sixth assignment of error he argues that the erroneous admission of evidence regarding Fiorini's medical expenses and lost earnings resulted in a verdict which is against the manifest weight of the evidence. We overrule all seven assignments of error.

In his cross-appeal, Fiorini argues that the trial court erred to his prejudice in failing to award prejudgment interest from the date the cause of action arose. We sustain Fiorini's assignment of error.

We first address Whiston's assignment of error regarding the trial court's failure to grant his directed verdict on the issue of lost earnings. The trial court, like this court, cannot consider the weight of the evidence or the credibility of the witnesses when ruling on a motion for a directed verdict pursuant to Civ.R. 50(A). It must construe the evidence most strongly in favor of the nonmoving party and determine whether reasonable minds could come to but one conclusion on the evidence submitted. If only one conclusion may be drawn, a directed verdict should be granted. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. If, however, there is evidence which, if believed, would permit reasonable minds to come to different conclusions, the issue must be submitted to the jury.

In the case *sub judice,* Fiorini testified that during the year prior to his accident, as a self-employed person, he earned about $7,900, and in the first seven months of 1988, he earned about $5,500. He also testified that from the time of the accident until September 1989, he earned around $800 after taxes, losing an estimated $10,400. When questioned about documentation of his earnings, he testified that his records were lost after his landlord locked him out of his business premises. The trial court held that the evidence presented was such that reasonable minds could make a decision in favor of Fiorini on the issue of lost earnings, thereby overruling the motion for directed verdict. We hold that there was evidence presented which, if believed, would permit reasonable minds to come to different conclusions and, therefore, we overrule Whiston's first assignment of error.[1]

We next address Whiston's second assignment of error in which he argues that the trial court erred to his prejudice in overruling his motion *in limine* to preclude the records of the chiropractor and the testimony of the chiropractor's

---

1. We disagree with Whiston's analysis of *LoSchiavo v. N. Ohio Traction & Light Co.* (1922), 106 Ohio St. 61, 138 N.E. 372, and find it inapplicable to the facts of this case because the testimony allowed in the case *sub judice* was not on the subject of profits and expenses of appellee's business, but on the loss of earnings.

records custodian. The disposition of a motion *in limine* is "a preliminary and conditional estimate of the admissibility of evidence in the event that a claim actually goes to trial." *Abbott v. Mayfield* (Sept. 16, 1992), Hamilton App. No. C–910506, unreported, 1992 WL 229522. In order to preserve a claim of inadmissibility for review on appeal, the objections contained in a motion *in limine* must, therefore, be raised again at trial, permitting the trial court to make a definitive ruling on the admissibility of the objected-to evidence in its actual context. See *Mason v. Swartz* (1991), 76 Ohio App.3d 43, 600 N.E.2d 1121.

Our review of the record demonstrates that Whiston timely renewed his objections to the admission of the evidence at trial and the trial court admitted into evidence the testimony of the records custodian and certain records of the chiropractor. Under these circumstances, we will treat Whiston's assignment of error as though it raises the question of admissibility of the objected-to evidence at trial.

■ Evidentiary rulings are within the broad discretion of the trial court and will be the basis of reversal on appeal only when the court abuses its discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056. Whiston contends that the trial court erred in allowing the records custodian to testify because Fiorini violated Civ.R. 26(E)(1), by not supplementing his answers to interrogatories. Assuming *arguendo* Civ.R. 26(E)(1) is even applicable to a records custodian, we hold that the trial court's refusal to exclude the records custodian's testimony was not an abuse of discretion. One of the purposes of the Rules of Civil Procedure is to provide for exchange of information between parties in order to eliminate any ambushes or surprises. See *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 12 OBR 73, 465 N.E.2d 444. The chiropractor was listed as an expert witness in Fiorini's answers to Whiston's interrogatories. The records custodian merely authenticated the chiropractor's records, providing no testimony as to any facts. We are hard put to see any unfair surprise or prejudice to Whiston resulting from the admission of the records custodian's testimony when Fiorini's answers to Whiston's interrogatories listed the chiropractor as an expert witness and stated that the chiropractor relied on medical records and reports to form his opinion.

Whiston further argues that the chiropractor's records were improperly admitted because copies were not supplied until three days prior to trial. There is no dispute that Whiston had the ability to procure the records of Fiorini's chiropractor through releases he had previously obtained. Likewise, there is no dispute that Fiorini's counsel sent Whiston's counsel all records as soon as he received them. We hold that the trial court did not abuse its discretion in refusing to exclude the records under these facts.

■ Whiston also contends in this assignment of error that the office records of the chiropractor [2] were inadmissible because they were irrelevant, incompetent and contained diagnosis or opinion. The trial court admitted the records pursuant to the business-records exception and Fiorini's testimony.

Evid.R. 803 creates exceptions to the hearsay rule, including the business-records exception contained in subparagraph (6), which states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(6) *Records of Regularly Conducted Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian * * *, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *"

R.C. 2317.40, the statutory equivalent of the above evidence rule, states, in pertinent part:

"A record of an act, condition, or event, in so far as relevant, is competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

We hold that the records were relevant evidence under Evid.R. 401, which broadly defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence * * * more probable or less probable than it would be without the evidence." The records, which described the examinations performed on Fiorini and his treatment progress, were obviously relevant to the issues in the case *sub judice.* Further, the records custodian's testimony satisfied the requirements of both the evidence rule and the statute as to the records at issue. Therefore, the chiropractor's records were competent evidence.

---

2. These records were designated at trial as Plaintiff's Exhibit No. 2.

■ As to Whiston's contention that the chiropractor's records were not admissible because they failed to meet all the requirements set forth in *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, 69 O.O.2d 419, 320 N.E.2d 312, because one document contained therein provides medical diagnosis, we disagree and hold that the document in question, viewed in context with the other documents contained within the contested exhibit, meets the requirements. In *Hytha, supra,* the court concluded that a physician's diagnosis in a record is admissible only where: (1) the diagnosis is a systematic entry in the records of a hospital or physician, (2) the diagnosis is the result of well-known and accepted objective practices, (3) the diagnosis is not based solely on the patient's complaints, (4) the diagnosis is made by a qualified person, (5) the evidence sought to be introduced is relevant and competent, (6) if the record is used to assert the truth of the matter asserted at trial, it must be the product of the party seeking its admission, and (7) it must be properly authenticated. Our review of the records and the testimony at trial demonstrates that the diagnosis, which Whiston argues is contained in the circled words on the last document contained within the exhibit, meets all the requirements of *Hytha,* including that it is part of a systematic entry, it is the result of accepted, objective practices of X-rays, physical evaluations, and orthopedic examinations, it is not based on subjective complaints, and it is made by a qualified person, a licensed chiropractor.[3] We overrule Whiston's second assignment of error.

■ In his third assignment of error Whiston argues that the chiropractor's bills should not have been admitted into evidence because they were not substantiated by competent evidence of medical necessity. We reiterate that the admission of evidence is within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be reversed absent a showing of an abuse of that discretion. See *Rigby v. Lake Cty., supra.* The trial court admitted the medical bills under R.C. 2317.421 and Fiorini's testimony.

R.C. 2317.421 states:

"In an action for damages arising from personal injury or wrongful death, a written bill or statement, or any relevant portion thereof, itemized by date, type of service rendered, and charge, shall, if otherwise admissible, be prima-facie evidence of the reasonableness of any charges and fees stated therein for medication and prosthetic devices furnished, or medical, dental, hospital, and

---

**3.** Even were we to hold that the requirements of *Hytha, supra,* were not met, and the chiropractor's records were wrongly admitted, the existence of this error would not necessarily require reversal unless it affected the substantial rights of the complaining party. Civ.R. 61; *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.3d 456, 474–475, 21 O.O.3d 285, 297, 424 N.E.2d 568, 581. The admission of the circled diagnosis was not prejudicial, but merely cumulative of the opinion testimony presented by Dr. Winston and the testimony of Fiorini.

funeral services rendered by the person, firm, or corporation issuing such bill or statement, provided, that such bill or statement shall be prima-facie evidence of reasonableness only if the party offering it delivers a copy of it, or the relevant portion thereof, to the attorney of record for each adverse party not less than five days before trial."

Fiorini testified at trial that his five-hundred-fifty-pound motorcycle fell on him after being hit by Whiston's pickup truck. He testified that the initial pain he felt after the accident increased and included pain in his lower back. He stated he mentioned back pain to Dr. Simon and that he also sought treatment from Affordable Chiropractic for the back pain. Fiorini further testified that the treatment provided by the chiropractor and Dr. Winston provided relief for his pain. Fiorini identified Plaintiff's Exhibit No. 1 as the bills he received for treatment after the accident. Our review of the chiropractor's bills demonstrates that they comply with the requirements of R.C. 2317.421.[4]

First, we are convinced that the bills were reasonable. "Proof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes *prima facie* evidence of the necessity and reasonableness of the charges for medical and hospital services." (Citation omitted.) *Wagner v. McDaniels* (1984), 9 Ohio St.3d 184, 9 OBR 469, 459 N.E.2d 561, paragraph one of the syllabus. Whiston offered no rebuttal evidence as to the reasonableness of the charges. Second, as to whether the medical care was reasonably necessary, Fiorini had the burden to show that the accident with Whiston caused the injuries for which he received treatment. Expert testimony is not necessary where the causal relationship is a matter of common knowledge. *Zalzal v. Scott* (1981), 1 Ohio App.3d 151, 1 OBR 462, 440 N.E.2d 64; *Wood v. Elzoheary* (1983), 11 Ohio App.3d 27, 29, 11 OBR 40, 42, 462 N.E.2d 1243, 1245. Likewise, "proof that described medical care was reasonably necessary for identified injuries may not require expert testimony when that treatment is a matter of common knowledge. The jury may sometimes decide whether specific care was justified for injuries caused by the liability event from evidence about the nature of the injuries and the nature of the care." (Citation omitted.) *Wood, supra.*

We hold that Fiorini's testimony provided competent evidence as to his condition after the accident and that expert medical testimony was not required to prove the causation and necessity of the medical care received. Even were we to determine that this was a case which required expert testimony, Dr. Winston's testimony provided the nexus between the accident and the injuries suffered by

---

4. Dr. Winston also testified and stated that Fiorini's back pain was, in his medical opinion, a direct result of the July accident.

Fiorini.[5] We conclude that the trial court did not abuse its discretion in allowing the chiropractor's bills to go before the jury. The questions of weight to be given the medical bills were correctly left to the jury, which returned a general verdict of $12,000.

Whiston argues in his fourth assignment of error that the trial court erred in admitting the opinion of Dr. Winston regarding the proximate cause of Fiorini's medical condition because his testimony was devoid of reference to examination of cervical and thoracic areas, and because his opinion was based on possibility and not probability. This assignment of error has no merit. The record clearly evidences that Dr. Winston based his opinion on his *examination* of Fiorini, the history he was given by Fiorini, and the treatment he had conducted, and that his opinion was, within a medical degree of certainty, that Fiorini "had sustained sprains and strains to the cervical, thoracic and lumbar spine." Further, the doctor testified that his opinion was, within a reasonable degree of medical certainty, that the injuries were a direct result of the July accident. Further, we agree with the trial court that the testimony of Dr. Winston on cross-examination—that it was possible that someone could go seven months after an accident and not complain of back pain—was in reference to reports of pain and not in reference to whether Fiorini's injuries were related to the accident. We hold that the admission of Dr. Winston's opinion regarding the proximate cause of Fiorini's medical condition was not erroneous.

In his fifth assignment of error, Whiston contends that the trial court erred to his prejudice in admitting evidence of Fiorini's lack of insurance. The first time Fiorini's lack of insurance was mentioned was during Fiorini's counsel's opening statement. At that time Whiston's counsel objected and the trial court sustained the objection. Subsequently, Whiston's counsel made an oral motion *in limine* to exclude evidence of Fiorini's lack of insurance. Fiorini's counsel argued that evidence of Fiorini's lack of insurance did not go to Fiorini's economic status, but was offered to show why he did not seek medical treatment. The trial court overruled the motion and stated that evidence of the lack of medical insurance was admissible for the limited purpose of explaining Fiorini's failure to seek treatment. The trial court offered to provide the jury a limiting instruction at the appropriate time. Whiston's counsel never made the request for such an instruction. In its charge to the jury, however, the trial court instructed the jurors that they were not to be influenced by sympathy and that they were not to consider the relative wealth of the parties. Our review of the

---

5. Whiston put on expert testimony, as well, to rebut Dr. Winston's testimony as to the relationship between Fiorini's injuries and the July accident.

record also demonstrates that Whiston's counsel asked Fiorini the following question, which Fiorini's counsel unsuccessfully moved to strike:

"Q. Until February 30th of 1989, you were turned down for medical treatment because you didn't have medical insurance?"

Also contained within the record was other testimony concerning Fiorini's lack of medical insurance, elicited by questions from Whiston's counsel.

Under the facts of this case, where evidence as to the lack of medical insurance was limited to one purpose, where the complaining party did not follow up on the trial court's offer of a limiting instruction, where the jury was instructed that the wealth of the parties was not to be considered, and where the complaining party also elicited testimony as to the issue in controversy, we cannot say that the trial court erred. Whiston's fifth assignment of error is overruled.

In his sixth assignment of error Whiston argues that because the evidence regarding Fiorini's medical expenses and his lost earnings was erroneously admitted, the jury verdict is against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Because we have previously determined that such evidence was not wrongly admitted, and the record demonstrates that the $12,000 verdict was supported by some competent, credible evidence as to causation and damages, we overrule this assignment of error.

We will discuss together Whiston's seventh assignment of error, wherein he alleges that the trial court erred to his prejudice in awarding prejudgment interest, and Fiorini's cross-appeal as to the date from which prejudgment interest should be computed. First, because we hold that the trial court did not abuse its discretion in awarding prejudgment interest, we overrule Whiston's seventh assignment of error.

R.C. 1343.03 states, in pertinent part:

"(C) Interest on a judgment, decree or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion by any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

In the case *sub judice* the trial court held an evidentiary hearing following the verdict against Whiston. It was not disputed at that hearing that Fiorini kept Whiston's insurer informed as to his medical bills incurred and his treatment progress following the accident and that no official settlement demand was made prior to the suit being filed and the determination of Fiorini's medical needs. There is no dispute that after receiving $3,000 in medical bills and prior to the lawsuit being filed, the insurer made a $500 offer to settle.

There is no dispute that the case then went to arbitration, where a unanimous verdict of $9,323.15 was awarded in favor of Fiorini and that Fiorini was willing to accept the arbitration award, but Whiston appealed it. Settlement was discussed on April 28, 1992, when Fiorini's counsel presented Whiston's counsel a letter stating Fiorini's medical expenses were $5,557.65, and that Fiorini might be amenable to accept less than the arbitration award in order to avoid litigation costs, and suggesting that a good-faith offer to settle be made within two weeks.

Soon thereafter, Whiston's counsel responded with an offer of $2,500. Fiorini lowered his demand to $7,500, informing Whiston's counsel he wanted to avoid further litigation costs and he was obligated to pay $5,600 in medical bills. The next day Whiston's insurer offered $4,000. Fiorini's counsel responded that Fiorini would accept $7,150, if his offer was accepted prior to his having to expend $1,250 for a video deposition and transcript. If not, his demand would be increased to cover these expenses. The insurer was unwilling to authorize more than $4,000. The case then went to trial, where a $12,000 verdict was awarded in Fiorini's favor.

In its entry and opinion concerning prejudgment interest, the trial court determined:

"The issue then is whether the defendant rationally evaluated the risks with respect to liability for medical expenses and made an appropriate good faith monetary settlement offer with this in mind.

"In light of no real question of liability, a substantial arbitration award, and extremely low settlement offers extended on the eve of trial by the defendant, the Court finds that the defendant failed to make a good faith effort to settle the case and that the plaintiff did not fail to make a good faith effort to settle the case during that period and that the plaintiff has met its burden of proof of establishing entitlement to prejudgment interest from the date of the arbitration award."

Whether a party has made a good-faith effort to settle under R.C. 1343.03(C) is determined by whether he has: (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good-faith monetary settlement offer or responded in good faith to an offer from the

other party. *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus. All four criteria must be met.

We note that "whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court" and will not be overturned absent an abuse of discretion. *Kalain, supra,* at 159, 25 OBR at 202–203, 495 N.E.2d at 574. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251.

From our review of the record and in light of the fact that liability, while not stipulated, was not contested, we hold that the trial court did not abuse its discretion in concluding that Fiorini met his burden of establishing his entitlement to prejudgment interest.

We do hold, however, that the trial court erred in awarding prejudgment interest from the date of the arbitration award. The statutory language is clear. Prejudgment interest "shall be computed from the date the cause of action accrued to the date on which the money is paid * * *." R.C. 1343.03(C). See *Brumley v. Adams Cty. Hosp.* (1991), 72 Ohio App.3d 614, 595 N.E.2d 948. Further, in *Huffman v. Hair Surgeon, Inc.* (Aug. 22, 1984), Hamilton App. No. C–830818, unreported, 1984 WL 6961, we stated that the plaintiff was entitled to prejudgment interest from the date the plaintiff was injured but, because the accident antedated the effective date of R.C. 1343.03(C), prejudgment interest, if awarded on remand, could only be awarded from the effective date of the statute.[6]

The cause of action accrued in the case *sub judice* on July 29, 1988. Therefore, the trial court erred when it determined that prejudgment interest should be computed from September 5, 1991, and not July 29, 1988, the date Fiorini was injured.

Accordingly, the judgment appealed in Nos. C–920691 and C–920678 is affirmed. In No. C–920710, however, the judgment is reversed and the cause remanded to the trial court for revision of the award of prejudgment interest in accordance with the law and consistent with this decision.

*Judgment accordingly.*

HILDEBRANDT and GORMAN, JJ., concur.

---

6. The Ohio Supreme Court in *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248, agreed that prejudgment interest could not be awarded for the period prior to the effective date of the statute and allowed the interest to be computed from the effective date of R.C. 1343.03(C).