RIMSKY et al., Appellees,

v.

SNIDER; Carson, Admr., Appellant.

[Cite as *Rimsky v. Snider* (1997), 122 Ohio App.3d 248.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950734.

Decided Aug. 1, 1997.

*Richard D. Lawrence & Assoc. Co., L.P.A.,* and *Thomas C. Korbee,* for appellees.

*Matthew J. Smith Co., L.P.A.,* and *Matthew J. Smith,* for appellant.

*Per Curiam.*

On September 7, 1993, plaintiffs-appellees filed a complaint seeking damages for injuries to Joseph M. Rimsky and loss of consortium for Mary Lou Rimsky resulting from two automobile accidents, which occurred approximately ten weeks apart. The first collision occurred on September 5, 1988, when defendant Jeffrey P. Snider's pickup truck hit the rear of the Rimskys' automobile. The second collision took place on November 17, 1988, when Charles R. Stubbs's car struck the right front fender area of Joseph Rimsky's automobile. Snider admitted liability for the first accident. Stubbs did not admit liability for the second collision. Prior to trial, Stubbs died from causes unrelated to the accident.

Joseph Rimsky alleged that he suffered neck, shoulder, low back and right arm injuries as a result of the accidents. Following a trial, the jury returned a verdict against defendant Snider in favor of Joseph Rimsky in the amount of $89,500. The jury also awarded Mary Lou Rimsky $5,500 from defendant Snider. Snider did not appeal the jury's verdict. The jury returned a verdict against defendant-appellant Dennis M. Carson, administrator WWA of the estate of Charles R. Stubbs, deceased ("appellant"), in favor of Joseph Rimsky in the amount of $49,500. Mary Lou Rimsky was awarded $5,500 against appellant for loss of consortium. Appellant timely appealed, raising five assignments of error for our review.

The first assignment of error alleges:

"The trial court erred in permitting plaintiffs-appellees' medical expert witness to testify regarding medical bills of other medical care providers when the expert admitted he had not reviewed the subject medical bills and records of the other providers, and the records were not properly introduced into evidence."

Appellant argues that the trial court erred in permitting orthopedic surgeon Dr. Andrew M. Roth, Joseph Rimsky's primary treating physician, to testify regarding the authenticity and reasonableness of certain bills submitted by other health-care providers, and the causal connection between the bills and the 1988 automobile accidents. We point out initially that the reasonableness of the bills is established by R.C. 2317.421.[1]

---

1. R.C. 2317.421 provides:

   "In an action for damages arising from personal injury or wrongful death, a written bill or statement, or any relevant portion thereof, itemized by date, type of service rendered, and charge, shall, if otherwise admissible, be prima-facie evidence of the reasonableness of any charges and fees stated therein for medication and prosthetic devices furnished, or medical, dental, hospital, and funeral services rendered by the person, firm, or corporation issuing such bill or statement, provided, that such bill or statement shall be prima-facie evidence of

At trial, plaintiffs-appellees presented the testimony of Dr. Roth during their case-in-chief by videotaped deposition dated August 17, 1995. After plaintiffs had presented their evidence, counsel moved for the admission of plaintiffs' exhibits. Defense counsel objected to the admission of certain medical bills and records submitted by providers who had not testified at trial. The trial court permitted plaintiffs to take a second videotaped deposition of Roth on August 26, 1995, in order to establish a causal connection between the bills and the automobile accidents of 1988.

In his second deposition, Roth testified that he was Joseph Rimsky's primary treating physician for the injuries Rimsky sustained in the automobile accidents. Roth stated that he coordinated Joseph Rimsky's care and arranged for consultations, referrals, evaluations and treatments in order to identify and correct the problem that was causing Rimsky's continuing pain. Roth testified that he discussed the results of the various treatments and evaluations with Rimsky in the course of his continuing treatment of Rimsky and coordination of Rimsky's care.

Roth reviewed each bill exhibited by plaintiffs and testified to a reasonable medical probability that the bills were for evaluation and/or treatment of the pain and injuries suffered by Joseph Rimsky as a result of the 1988 automobile accidents. Roth also testified that the bills were necessary as part of Rimsky's medical treatment. Roth stated that the bills of the other providers were not a part of his medical records and that he could not testify as to how the other providers prepared their bills.

Joseph Rimsky testified as to the injuries that he sustained in the accidents, and stated that all of the bills in question were incurred as a result of the automobile accidents of 1988.

Evidentiary rulings are within the broad discretion of the trial court and will be reversed on appeal only when the court abuses its discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056. Plaintiffs had the burden to show that the accidents proximately caused their claimed damages. See *Wood v. Elzoheary* (1983), 11 Ohio App.3d 27, 11 OBR 40, 462 N.E.2d 1243. Proof that medical care was reasonably necessary is part of the claimant's burden to show that the liability event proximately caused the claimed damages. *Id.* at 29, 11 OBR at 42, 462 N.E.2d at 1245. The jury may sometimes decide whether specific care was justified for injuries caused by a liability event from evidence about the nature of the care. *Id.*

---

reasonableness only if the party offering it delivers a copy of it, or the relevant portion thereof, to the attorney of record for each adverse party not less than five days before trial."

In *Ronk v. Hall* (Dec. 31, 1987), Delaware App. No. 87–CA–9, unreported, 1987 WL 33003, plaintiff claimed that his back was injured in an automobile accident. Proximate cause and the negligence of defendant were admitted. The issues of injury and damages were tried to a jury. After some confusion over stipulations regarding medical bills, plaintiff was recalled to identify certain medical bills and to establish their causal connection to the accident. Defendant argued that the injuries sustained in the accident were not properly separated from injuries and treatments plaintiff had received for numerous other conditions. Plaintiff testified that the specific medical bills were incurred as a direct result of the injuries sustained in the automobile accident. No expert linked the questioned bills to the testimony of doctors about plaintiff's condition. The Fifth Appellate District held that the trial court did not err in submitting the bills to the jury.

In *Felger v. Giant Eagle, Inc.* (Sept. 30, 1994), Mahoning App. No. 93 C.A. 132, unreported, 1994 WL 542911, defendants argued that the trial court erred in admitting plaintiff's medical bills into evidence where there had been no expert testimony as to the necessity of those bills. The bills were submitted by nine providers of health services to plaintiff, none of which testified at trial. Defendant objected to the admission of the bills because no physician had testified as to proximate cause relating the bills to plaintiff's accident.

Plaintiff Felger testified as to each of the disputed bills, describing the treatment she was receiving and why she was receiving the treatment. In addition, Dr. Richard Wise testified on plaintiff's behalf, describing plaintiff's complaints and symptoms. Wise testified as to various referrals he had made for plaintiff and as to treatments that he and other doctors rendered to plaintiff. Wise testified that the treatments and various referrals relating to the questioned bills resulted from the injuries suffered by plaintiff in the accident at defendant's store. The Seventh District Court of Appeals held that the trial court did not abuse its discretion in admitting the bills into evidence, stating:

"Collectively, the testimony of the plaintiff-appellee and the testimony of her attending physician established the nature of her injuries and was sufficient to allow a jury to determine the causal relationship between the accident and the medical expenses involved in Plaintiff's Exhibit 1." *Id.*

In *Fiorini v. Whiston* (1993), 92 Ohio App.3d 419, 635 N.E.2d 1311, plaintiff was injured when his motorcycle fell on him after being hit by defendant's pickup truck. Plaintiff received treatment for his injuries from Dr. Simon, Dr. Winston and Affordable Chiropractic. Defendant argued that the chiropractic bills should not have been admitted into evidence because they were not substantiated by competent evidence of medical necessity, an element of proximate cause. The chiropractor did not testify at trial. In holding that the trial court did not err in admitting the chiropractic bills into evidence, this court stated:

"We hold that Fiorini's testimony provided competent evidence as to his condition after the accident and that expert medical testimony was not required to prove the causation and necessity of the medical care received. Even were we to determine that this was a case which required expert testimony, Dr. Winston's testimony provided the nexus between the accident and the injuries suffered by Fiorini. We conclude that the trial court did not abuse its discretion in allowing the chiropractor's bills to go before the jury. The questions for weight to be given the medical bills were correctly left to the jury, which returned a general verdict of $12,000." *Id.* at 427–428, 635 N.E.2d at 1316.

In the case *sub judice*, Roth testified that he was Joseph Rimsky's primary treating physician and that he coordinated Rimsky's care. Roth discussed the various treatments and evaluations with Rimsky in the course of his treatment. Roth reviewed the medical bills and testified that they were incurred as a result of the automobile accidents. Joseph Rimsky also testified that the bills resulted from the accidents.

We hold that the trial court did not abuse its discretion in permitting Roth to testify as to the medical bills. The question of the weight to be given the evidence was properly left to the jury. The first assignment of error is overruled.

Appellant's second assignment of error alleges that the trial court erred in permitting the jury to consider the medical bills of Dr. Philip L. Zaacks as they related to the accident involving Charles Stubbs, because Zaacks did not establish a causal connection between the bills and the Stubbs accident. The Stubbs accident occurred on November 17, 1988.

Zaacks, an anesthesiologist who treated Joseph Rimsky for pain, testified on behalf of plaintiffs. During direct examination, the following exchange took place between Zaacks and plaintiffs' counsel:

"Q. And one other question, Doctor. Are those charges for the treatment that you've rendered proximately related to the automobile accidents of September, 1988?

"A. Yes."

Appellant argues that the reference to "September, 1988" accidents causally links Zaacks's bills only to the automobile accident of September 5, 1988, involving Jeffrey Snider, and not to the November 17, 1988, accident involving Charles Stubbs.

Earlier in Zaacks's direct examination he testified:

"Q. Doctor, based on the history Mr. Rimsky gave you concerning the collisions that he was in, the prior treatment history that he gave you, and based

on your examination and your treatment of him since 1993, based on your knowledge and your training and experience as a doctor in the specialty that you have, do you have an opinion with reasonable medical certainty concerning the proximate cause of the conditions that you've seen and treated in Mr. Rimsky?

"A.  Certainly. From the history presented to me, it appears that the cause of his pain was originated from his motor vehicle accidents."

The trial court held that the jury would be permitted to consider Zaacks's bills as they related to the November 17, 1988, accident.  In resolving the question, the court stated:

"Court is going to hold that the reference to 'accidents' is the key to this question.  And we're dealing with—this is an unusual type situation.  If it was required on the part of any of the three of you who are trying this case that each time you referred to any kind of a date, you'd be at your peril if you didn't include both.  However, you do cover it when you're referring to 'accidents.' "

"This jury is well aware at this time that there are two accidents involved. You told them.  You told them that.  So to indicate that Mr. Korbee, by merely not using the second date, he'd be cut off, he did, in fact, refer to 'accidents' when, in fact, he could have used no date at all, the Court just doesn't accept your argument.  However, it is on the record and the motion will be overruled with exceptions."

█ We have reviewed the record, and we hold that in the overall context of Zaacks's testimony, it is clear he was referring to both accidents as causing the pain for which he treated Joseph Rimsky.  The trial court did not abuse its discretion in permitting the jury to consider Zaacks's bills as they related to the November 17, 1988 accident.  The second assignment of error is overruled.

The third assignment of error alleges:

"The trial court erred in failing to properly instruct the jury on use of mathematical formulas, when such an instruction was requested by defendant-appellant and plaintiffs-appellees used such a formula in closing argument."

In closing argument, plaintiffs' counsel suggested to the jury that they should "take these medical bills here and multiply them by two and put that on there as additional for the pain."  Appellant requested that the trial court give Ohio Jury Instruction 23.04, which states:

"The suggestion of counsel in argument that you use a (unit value) (mathematical formula) to compensate for (pain and suffering) (disability) cannot be considered as evidence.  There is no recognized unit value for (pain and suffering) (disability).  Compensation for (pain and suffering) (disability) is solely within your province in the event you find for the plaintiff."

The trial court did not give the requested instruction.

Appellant cites *Grossnickle v. Germantown* (1965), 3 Ohio St.2d 96, 32 O.O.2d 65, 209 N.E.2d 442, in support of his argument that the trial court erred in failing to give the requested jury instruction. In *Grossnickle*, after describing the effect of plaintiff's injuries, plaintiff's counsel argued to the jury in the rebuttal portion of his closing argument that they should award plaintiff $5 per day for 21.55 years of life as compensation for pain and suffering. The *Grossnickle* court held in paragraph one of the syllabus:

"In an action for personal injuries for which money damages for pain and suffering are recoverable, it is permissible for counsel for the injured party to suggest in argument a daily monetary amount which, when multiplied by a factor fairly representative of the probable duration of the pain and suffering, illustrates the basis for the total amount sought as to compensation therefor, if the court instructs the jury that such argument is not to be received as evidence. Making such suggestion for the first time in closing argument exceeds the bounds of propriety but does not constitute prejudicial error if no objection is interposed on that ground."

*Grossnickle* does not apply where defense counsel was not deprived of the opportunity to argue in reply. *Penny v. Thurman* (1972), 34 Ohio App.2d 190, 63 O.O.2d 319, 297 N.E.2d 555. *Grossnickle* does not condemn the use of a mathematical formula in closing argument; *Grossnickle* requires only that defense counsel be given an opportunity for rebuttal. *Bauman v. Schmitter* (1989), 54 Ohio App.3d 51, 560 N.E.2d 827; *Bianchi v. Paliga* (Dec. 11, 1984), Mahoning App. No. 84 C.A. 37, unreported, 1984 WL 3798. The primary reason for prohibiting such an argument in plaintiff's closing rebuttal is the fact that defense counsel is not given an opportunity to respond. *Miko v. Lincoln Natl. Corp.* (Mar. 6, 1997), Cuyahoga App. No. 70826, unreported, 1997 WL 97243.

In the case *sub judice*, defense counsel had ample opportunity to respond to plaintiffs' counsel's argument. Further, the trial court instructed the jury that closing statements were not to be considered as evidence, thereby including the sum and substance of the proposed jury instruction within the charge to the jury. See *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220; *Parsons v. Scott* (Sept. 8, 1995), Lake App. No. 94–L–154, unreported.

We hold that under the facts of this case, the trial court did not commit prejudicial error in failing to give the requested jury instruction. The third assignment of error is overruled.

Appellant's fourth assignment of error alleges that the trial court erred in permitting the jury to correct its verdict when the jury's decision had already been announced.

After deliberations, the jury returned a general verdict against appellant, awarding plaintiff Joseph Rimsky $49,500 and plaintiff Mary Lou Rimsky $5,500, a total of $55,000. The jury also completed interrogatory D, which instructed the jury to state the total amount of damages due plaintiff. Interrogatory D was intended to refer only to the damages to be awarded plaintiff Joseph Rimsky. The jury completed interrogatory D by filling in the amount of $55,000. The trial court noticed the inconsistency between interrogatory D and the general verdict, explained that interrogatory D was to apply only to the damages due from appellant to plaintiff Joseph Rimsky and sent the jury back to deliberate further. The jury subsequently returned with the amount of $49,500 listed under interrogatory D, which was consistent with the general verdict.

Pursuant to Civ.R. 49(B), "when one or more of the [interrogatory] answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial." *Shaffer v. Maier* (1994), 68 Ohio St.3d 416, 421, 627 N.E.2d 986, 990. In the event of a conflict between the interrogatories and general verdict, "the clear, best choice was to send the jury back for further deliberations." *Id.*

Where the jury's verdict is ambiguous and may be inconsistent with the instructions given, the trial court should attempt to harmonize the jury's findings and, if it is not possible to do so, request clarification from the jury before it is discharged. *Garnett v. Brown* (Feb. 26, 1997), Hamilton App. No. C–950827, unreported, 1997 WL 78600. If the jury is still available, it is not unreasonable for the court to have it resolve any inconsistency between the general verdict and the answers to the interrogatories. *Wagner v. Rollercade II, Inc.* (1983), 11 Ohio App.3d 199, 200, 11 OBR 294, 294, 463 N.E.2d 1295, 1297. The question is whether the trial court abused its discretion in sending the jury back for further deliberations. *Id.*

We hold that the trial court did not abuse its discretion in following Civ.R. 49(B) and sending the jury back for further deliberations where the answer to the interrogatory was in conflict with the general verdict. The fourth assignment of error is overruled.

The fifth assignment of error alleges:

"The jury's verdict in favor of the plaintiffs-appellees against this defendant-appellant is in entirety against the manifest weight of the evidence since the evidence demonstrated the injuries of plaintiff-appellee were at most 25 percent attributable to the subject accident with this defendant-appellant."

Dr. Andrew M. Roth, an orthopedic surgeon, Dr. David B. Roos, a vascular surgeon, and Dr. Robert G. Gerwin, a neurologist, all testified that they treated plaintiff Joseph Rimsky for the injuries he sustained in the automobile accidents. Each doctor stated that in his opinion approximately twenty-five percent of Rimsky's injuries were causally related to the November 17, 1988 automobile accident involving Charles Stubbs. Therefore, appellant argues, the jury's verdict, which assesses against appellant approximately thirty-six percent of the total damages awarded to Joseph Rimsky, is against the manifest weight of the evidence.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus; *Fiorini v. Whiston, supra*, 92 Ohio App.3d at 429, 635 N.E.2d at 1317.

The assessment of damages is a matter within the province of the jury. *Weidner v. Blazic* (1994), 98 Ohio App.3d 321, 648 N.E.2d 565; *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 25 OBR 115, 495 N.E.2d 462. The jury was free to accept or reject any or all of the evidence as to damages. *Weidner v. Blazic, supra; Carter v. Simpson* (1984), 16 Ohio App.3d 420, 16 OBR 490, 476 N.E.2d 705.

There was ample testimony that even though the September 5, 1988 accident had caused the greater portion of Joseph Rimsky's injuries, the November 17, 1988 accident with Charles Stubbs had caused some injury and had aggravated Rimsky's existing injuries. The evidence showed that Rimsky had not suffered from the numbness, pain and tingling in his right arm and hand until after the second accident. There is no indication in the record that the jury's award of damages was based on passion and prejudice.

We hold that the jury's award of damages is supported by competent, credible evidence. The fifth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgement affirmed.*

DOAN, P.J., HILDEBRANDT and RAYMOND E. SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of First Appellate District, sitting by assignment.