OPINION
Plaintiff-appellant, Jody Bradley, appeals the decision of the Warren County Court of Common Pleas dismissing his injury claim against defendant-appellee, Tri-State Computer Exchange ("Tri-State"), and the jury verdict denying him participation in the Ohio Workers' Compensation Fund ("the Fund").
Bradley was an employee of Tri-State, owned and operated by John Grinstead, Jr., the company's president. At the time of Bradley's alleged injury, Tri-State was located at 5 Village Square, Glendale, Hamilton County, Ohio. On July 30, 1993, John Grinstead, Jr., told Debbie Burt, Tri-State's office manager, that his father, John Grinstead, Sr., was giving him some office furniture. Debbie sent Bradley, who was employed by Tri-State as a computer technician, and her father, Earl Burt, to collect the furniture from Grinstead, Sr., in Warren County, Ohio. At the time of these events, Bradley and Debbie were dating one another. Earl Burt was renting the property at 5 Village Square to Tri-State, and was thus Tri-State's landlord.
Bradley and Earl took a U-Haul truck to Grinstead, Sr.'s Warren County office to get the furniture. Bradley loaded some of the furniture by himself, including a metal desk. Upon returning to the Tri-State offices, Bradley unloaded the furniture with the help of Earl and David Deddens, a Tri-State employee. Bradley moved furniture from inside the truck, with Earl and Deddens on the ground. Bradley, Earl, and Claude Winbush, another Tri-State employee, then made a second trip to another location to pick up furniture and supplies.
The next week, Bradley told Grinstead, Jr., that he had hurt his back when unloading the metal desk from the truck. Grinstead, Jr., told Bradley to go see a doctor. Bradley went to Cincinnati Chiropractic Clinic ("CCC") that day, where he was seen by Dr. Jeronimo L. Arenas. Sally Wilson, Debbie Burt's sister, was a billing clerk and receptionist at CCC at that time. The following day, Bradley came to work with a back brace. His general job duties remained as computer technician, which did not involve much heavy lifting.
In September and October 1993, Tri-State moved its offices to 100 Security Drive, Fairfield, Butler County, Ohio. The move was apparently a last-minute decision, after Earl Burt informed Grinstead, Jr. that he was raising Tri-State's rent. Soon after the move, Bradley was laid off. Debbie quit because Bradley was laid off. In November 1993, Bradley and Debbie opened a new business, Computer Emporium, at the 5 Village Square location.
In January 1994, Bradley filed a workers' compensation claim application. The application was allegedly prepared by Wilson at CCC during Bradley's initial consultation on August 5, 1993. The application was signed and dated by Bradley on August 2, 1993. The application stated that Bradley was injured while moving and unloading furniture at 5 Village Square, but listed Tri-State's address as 100 Security Drive. On August 29, 1994, after a hearing, an Industrial Commission of Ohio ("Commission") staff hearing officer denied Bradley's claim. The Commission refused Bradley's appeal of the staff hearing officer's decision.
Bradley then appealed to the Hamilton County Court of Common Pleas, filing a complaint against the Administrator of the Bureau of Workers' Compensation ("Administrator"), the Commission, and Tri-State. Bradley alleged in Count One that he was injured in the course of and arising out of his employment, making him eligible to participate in the Fund. Count Two alleged that Tri-State was a noncomplying employer, having not paid its workers' compensation premiums, making Tri-State liable to him for his injury.
Three months later, Bradley dismissed his complaint in Hamilton County and filed an amended complaint in the Warren County Court of Common Pleas, because Warren County, the location of Grinstead, Sr.'s office, was where the alleged injury occurred.[1] The amended complaint was identical to the Hamilton County complaint. The Commission filed a motion to dismiss itself as a party-defendant because it had not applied to be made a party.[2]
The motion was granted.
Tri-State filed a motion for judgment on the pleadings, or in the alternative for summary judgment, as to Count Two. Tri-State argued that Bradley failed to plead sufficient facts to establish its status as a noncomplying employer, or its liability for Bradley's injury. Bradley filed a motion for partial summary judgment, arguing that Tri-State could not assert common law defenses to employer liability and that he set forth facts establishing his right to participate in the Fund. Bradley also filed a motion in opposition to Tri-State's motion.[3]
The Administrator joined in Tri-State's motion for judgment on the pleadings, and also filed a memorandum in opposition to Bradley's motion for partial summary judgment, arguing that Bradley was not entitled to participate in the Fund. The Administrator asserted that Bradley had not demonstrated that his injury arose out of his employment, and that any issues that did exist were matters of credibility for a jury to resolve. Tri-State also filed a memorandum in opposition to Bradley's motion for partial summary judgment, alleging that it was a complying employer, and that Bradley did not demonstrate that his injury was Tri-State's fault.
The trial court filed a single order addressing all of the motions discussed above. As to judgment on the pleadings, the trial court found that Bradley failed to set forth allegations sufficient to establish that Tri-State is liable to him as a noncomplying employer. The trial court addressed the motion for partial summary judgment in the alternative, "[a]ssuming, arguendo, that Count II does set forth a cause of action," and stated that Bradley had failed to set forth sufficient facts to show he was entitled to relief or to create a genuine issue of fact as to his ability to gain relief. As a result, the issue of Tri-State's status as a noncomplying employer was moot. The trial court found that the evidence regarding whether Bradley's injury occurred in the course of his employment was conflicting, and was therefore an issue for a jury to decide. Tri-State's motion for judgment on the pleadings was granted, and Bradley's motion for partial summary judgment was overruled.
A two day jury trial was held to determine if Bradley should participate in the Fund. Bradley presented Debbie Burt, Earl Burt, Wilson and himself as witnesses, as well as Dr. Jay Corson, a chiropractor who had recently treated Bradley's injury. Bradley had been referred to Dr. Corson by counsel. Earl and Debbie both testified that Bradley first complained of pain in his back after unloading the desk at the Tri-State Glendale office. They testified that Bradley both loaded and unloaded the desk by himself, without any help. Debbie further testified that Bradley spent the weekend after this injury in pain on the couch. Debbie testified that Bradley went to CCC for treatment because Grinstead, Jr., referred him there on Thursday, August 5, 1993.
Wilson testified that she was employed at CCC when Bradley arrived for treatment. She testified that Bradley came to CCC on Monday, August 2, 1993, and that she filled out the workers' compensation claim application with information given to her by Bradley. She then forwarded the claim application to Debbie at Tri-State. After Bradley and Debbie started Computer Emporium, she worked with them at 5 Village Square in Glendale, for which she was compensated by Computer Emporium.
Bradley testified that he hurt his back while loading the desk onto the U-Haul truck. He did not complain until later because there were no supervisors present at the time. After he was laid off from Tri-State, he returned in November 1993 to pick up a refrigerator he had left at the company. He testified that he carried the refrigerator up a flight of steps and loaded it on his truck with the help of Grinstead, Jr. Before being referred to Dr. Corson by counsel, he had not sought treatment for at least eighteen months. Bradley admitted that at the time of his injury Tri-State's only location was at 5 Village Square in Glendale.
Dr. Corson testified that Bradley was referred to his Lawrenceburg, Indiana office in March 1997. He took a full verbal history from Bradley, including injuries Bradley had suffered when he was younger. He secured Bradley's previous records from CCC. He believed that Bradley's claimed injury was a "competent producing cause" of his present condition. When Dr. Corson sought to testify about what the CCC records showed, opposing counsel for the Administrator and Tri-State objected, arguing that they had not been given timely notice of the records and that the records were not properly authenticated. The trial court sustained the objection. When Bradley sought to introduce the records into evidence, the trial court refused to admit them on the same grounds. Dr. Corson was permitted to base his conclusion regarding Bradley's injury only upon his own examination.
The Administrator and Tri-State presented Grinstead, Jr., Grinstead, Sr., and Deddens as witnesses. Grinstead, Sr., testified that he did not see Bradley display any sign of injury or discomfort when moving the furniture. Grinstead, Jr., testified that he was told by Bradley of the alleged injury on Thursday, August 5, 1993, and that Bradley said he was injured at the Glendale office, not at Grinstead, Sr.'s office. Grinstead, Jr., testified that he told Bradley to see a doctor, but did not refer Bradley to CCC. Nor did he help Bradley move the refrigerator, although he observed Bradley move it without help. As of the first week of August 1993, when Bradley allegedly filled out the workers' compensation claim application, Grinstead, Jr., had yet to even see the Fairfield location to which Tri-State moved.
Deddens testified that he was present when the furniture was unloaded at the Glendale office. He stated that he and Earl Burt helped Bradley unload the furniture, including the desk. He testified that Bradley was upset about having to move the furniture, and that Bradley was swearing and throwing things around in anger. That day and the following week, he heard no complaints from Bradley regarding an injury, although Bradley soon began wearing a back brace. Deddens testified that he observed Bradley remove the refrigerator, using a two-wheel dolly, pulling the refrigerator up a flight of stairs and loading it onto his truck by himself.
The jury returned a verdict that Bradley should not be entitled to participate in the Fund. The trial court duly filed a judgment entry on the verdict. Bradley appeals, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING TRI-STATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISMISSING APPELLANT'S SECOND CAUSE OF ACTION.
In his first assignment of error, Bradley contends that the trial court should not have granted Tri-State's motion for judgment on the pleadings and for summary judgment.[4]
Bradley argues that there were genuine issues of fact regarding whether Tri-State was a noncomplying employer and whether his injury occurred in the scope of his employment.
Civ.R. 12(C) provides:
 Motion for judgment on the pleadings. After the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings.
A motion pursuant to Civ.R. 12(C) only raises questions of law to be determined by consideration of the pleadings. State exrel. Midwest Pride IV, Inc. v. Pontious (1996), 75 Ohio St.3d 565,570; Kareth v. Toyota Motor Sales (Sept. 28, 1998), Clermont App. No. CA98-01-011, unreported, at 3, appeal dismissed (1999), 84 Ohio St.3d 1502. Dismissal of a cause under Civ.R. 12(C) is appropriate where the court
 (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and
 (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.
 Midwest Pride IV, 75 Ohio St.3d at 570, citing Lin v. GatehouseConstr. Co. (1992), 84 Ohio App.3d 96, 99. Thus, Civ.R. 12(C) requires a finding that "no material factual issues exist and that the movant is entitled to judgment as a matter of law."Midwest Pride IV, 75 Ohio St.3d at 570. Unlike a determination under Civ.R. 12(B)(6), which allows for review of the complaint alone, review under Civ.R. 12(C) allows all pleadings to be considered. Id. at 569.
R.C. 4123.77 provides:
 Employers mentioned in division (B)(2) of section 4123.01 of the Revised Code, who fail to comply with section 4123.35 of the Revised Code are not entitled to the benefits of sections 4123.01 to 4123.94, inclusive, of the Revised Code, during the period of such noncompliance, but are liable to their employees for damages suffered by reason of personal injuries sustained in the course of employment caused by the wrongful act, neglect, or default of the employer, or any of the employer's officers, agents, or employees, and also to the personal representatives of such employees where death results from such injuries, and in such action the defendant shall not avail himself or itself of the following common law defenses:
(A) The defense of the fellow servant rule;
(B) The defense of the assumption of risk;
(C) The defense of contributory negligence.
Such employers are subject to sections 4123.37 and4123.75 of the Revised Code.
Any employer as defined by R.C. 4123.01(B)(2) that fails to pay into the state insurance fund the required annual premiums as mandated by R.C. 4123.35(A) may be found to be a noncomplying employer. See Bridges v. Natl. Engineering Contracting Co. (1990), 49 Ohio St.3d 108, 115. Only after the Industrial Commission certifies that an employer has established industrial coverage and paid its premium is the employer a "complying employer" as a matter of law, entitled to the benefits of the workers' compensation statutes (R.C. Chapter 4123). Id. at paragraph two of the syllabus.
In short, if an employer fails to pay contributions to the state workers' compensation fund as required by R.C. 4123.35, that employer may be liable to its employee pursuant to R.C. 4123.77
where the employee is injured in the course of employment, if such injury is caused by the wrongful act, neglect, or default of the employer.
Bradley's complaint alleged, first, that Tri-State was a noncomplying employer at the time of his alleged injury. Bradley then alleged that his injury occurred during the course of his employment. However, the complaint contains no allegations which would support even an inference that Bradley's alleged injury was the result of "the wrongful act, neglect, or default" of Grinstead or any other Tri-State agent. Without something in the complaint from which such an inference can be drawn, the only conclusion to be reached is that no set of facts could be presented which would entitle Bradley to relief.
The trial court properly concluded that Tri-State was entitled, as a matter of law, to judgment on the pleadings as to Count Two of the complaint. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN PROHIBITING APPELLANT'S EXPERT FROM TESTIFYING ABOUT MEDICAL RECORDS OF PREVIOUS TREATING MEDICAL PRACTITIONERS THAT HE REVIEWED DURING THE COURSE OF HIS TREATMENT OF APPELLANT AND FROM [sic] REFUSING ADMISSION OF THOSE RECORDS.
In his second assignment of error, Bradley contends that the trial court abused its discretion by not allowing Dr. Corson to testify as to the chiropractic records upon which he relied when treating Bradley. Bradley asserts that this error was reinforced when the trial court refused to admit the records into evidence.
A trial court retains discretion in the admission or exclusion of evidence. Evid.R. 104(A); State v. Heinish (1990), 50 Ohio St.3d 231,239. Evid.R. 703 provides:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.
Unlike Federal Rule 703,[5] the Ohio rule does not allow the expert to rely upon facts or data not in the record. Staff Notes (1980) to Evid.R. 703. Thus, testimony by a chiropractor or other expert which is based on the opinions of other treating chiropractors, where such opinions are included in records not admitted into evidence, is inadmissible. Orr v.Ohio Bell Telephone Co. (Jan. 25, 1994), Columbiana App. No. 92-C-20, unreported, 1994 WL 24344, at *2. A chiropractor may rely upon the records of a previous chiropractor for purposes of testimony only if the records are properly admitted into evidence. Bishop v. Munson Transp., Inc. (1996), 109 Ohio App.3d 573,578-579; Dept. of Mental Health v. Mulligan (1988),39 Ohio App.3d 178, 180-181. Before business or medical records may be admitted into evidence, they must be authenticated, either by their custodian or another qualified witness testifying as to their authenticity, or by the custodian preparing a certificate of authenticity. Evid.R. 803(6); R.C. 2317.40; R.C. 2317.422. See Fiorini v. Whiston
(1993), 92 Ohio App.3d 419, 425.[6]
Bradley's chiropractic records from CCC were not properly identified and authenticated. Bradley did not present the custodian or maker of these records to establish their identity, the mode of their preparation, or their authenticity. As a result, these records could not be admitted into evidence. Because Bradley's chiropractic records were not admissible into evidence, Dr. Corson could not then testify to their content or rely upon them in his testimony.[7]
The trial court properly excluded the contested chiropractic records and properly limited Dr. Corson's testimony. The second assignment of error is overruled.
Assignment of Error No. 3:
 THE JURY'S VERDICT IN THIS CASE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his final assignment of error, Bradley contends that the jury lost its way in reaching its decision. He asserts that the evidence was uncontested that he was injured on the job, and was thus entitled to participate in the Fund.
Evaluating evidence and assessing the credibility of that evidence are the primary function of the jury as trier of fact, not an appellate court. Yuhasz v. Mrdenovich (1992), 82 Ohio App.3d 490,492. In judging the evidence in support of a jury's verdict in a civil case,
 [j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.
 Id., quoting C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
Entitlement to benefits from the Fund is governed by R.C.4123.54:
 Every employee, who is injured or who contracts an occupational disease, * * * contracted in the course of employment, wherever such injury has occurred or occupational disease has been contracted, provided the same were not:
(A) Purposely self-inflicted; or
 (B) Caused by the employee being intoxicated or under the influence of a controlled substance not prescribed by a physician where the intoxication or being under the influence of the controlled substance not prescribed by a physician was the proximate cause of the injury, is entitled to receive * * * from the state insurance fund, the compensation for loss sustained on account of the injury, occupational disease or death, and the medical, nurse, and hospital services and medicines, and the amount of funeral expenses in case of death, as are provided by this chapter.
"Injury" is defined by R.C. 4123.01(C) to include:
 any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.
The jury's verdict was not against the weight of the evidence. The fact that Bradley filed a claim application which contains information that is questionable at best would alone support the jury's verdict. There is also the testimony of the Grinsteads and Deddens, which the jury evidently found more credible than that of Bradley and his witnesses. It was contested whether Bradley complained of being injured while loading or unloading the desk. In any case, Bradley has posited two different versions of when he was hurt, first asserting that it was when unloading the desk, and later asserting that it was when loading the desk. Three months after his alleged injury, Bradley moved a refrigerator up a flight of stairs without help, demonstrating that his injuries, in the least, were not as incapacitating as he claims. Dr. Corson conceded that the tests he performed on Bradley only showed an injury had occurred, not when it occurred. Also, Bradley had prior injuries, and had not sought treatment for the alleged injury sustained while working at Tri-State for at least the eighteen months preceding his acquiring counsel.
The jury could reasonably have found that an injury did not occur in the course of Bradley's employment with Tri-State. The third assignment of error is overruled.
WALSH and VALEN, JJ., concur.
[1] R.C. 4123.512(A) provides that an appeal from an order of the Commission must be made to the court of common pleas of the county in which the injury occurred.
[2] R.C. 4123.512(B) states:
 The administrator, the claimant, and the employer shall be parties to the appeal and the court, upon the application of the commission, shall make the commission a party.
[3] It should be noted that in his motions, Bradley omitted certain elements of his claims when setting forth what he must prove to obtain a judgment. For example, he asserted that he need only prove that his injury was in the course of employment if Tri-State was a noncomplying employer. In fact, R.C. 4123.77
requires that the injury be both in the course of employment and due to "the wrongful act, neglect, or default of the employer."
[4] Although Bradley challenges the alleged grant of summary judgment, a review of the order shows that the trial court granted only Tri-State's motion for judgment on the pleadings. The discussion of summary judgment was presented as an alternative reason for granting the motion, making it dicta. We address the assignment of error as if challenging the grant of judgment on the pleadings.
[5] Fed.R.Evid. 703 provides:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
[6] Contrary to Bradley's assertion, the Rules of Evidence and the Revised Code do not "clearly provide for Dr. Corson being able to testify about his review of these records and clearly allows for their admission as part of the overall medical record." Such records are admissible only if they have been authenticated under the Rules of Evidence and the Revised Code.
[7] Because the records were not admissible, we need not address the issue of whether Bradley timely disclosed these records to the Administrator and Tri-State.